[See Case No. 6,172.]

McCAULEY v. CLINTON. See Case No. 8,688.

# Case No. 8,688.

## McCAULEY v. KELLOGG et al.

[2 Woods, 13; 1 Cent. Law J. 164.] [1]

Circuit Court, D. Louisiana. March 21, 1874.

CONSTITUTIONAL LAW — STATE BONDS — AMENDMENT 11—LEVY TAX—MANDATE—EXECUTIVE OFFICERS OF STATE.

1. The fact that holders of bonds issued by a state are prohibited, by the eleventh amendment to the constitution of the United States, from obtaining judgment on their bonds by suit against the state, in a court of the United States, does not authorize a court of equity, by decree, to compel the state officers to levy and collect a tax for the payment of principal and interest of the bonds.

[Cited in Chaffraix v. Board of Liquidation, 11 Fed. 644.]

2. A court of equity will not grant a mandatory injunction upon a preliminary or interlocutory motion, but only upon final hearing, and then only to execute the decree or judgment of the court.

3. A court of the United States will not compel, by injunction, the officers of a state to execute the laws of the state. To do so would be an attempt by the court to administer the state government.

4. An action' in a court of the United States against the executive officers of a state, in their official capacity, to compel them to comply with a contract of the state by the enforcement of its laws, is, to all intents and purposes, an action against the state, and prohibited by the eleventh amendment to the constitution of ·the United States.

[Compare Bancroft v. Thayer, Case No. 835.]

This was a bill in equity, which was heard upon the motion of complainants for a preliminary injunction. The defendants filed neither answer nor affidavits denying the averments of the bill. The bill was filed by John L. McCauley, of the state of New York, on behalf of himself and all others who were similarly situated, and who were willing to make themselves parties complainant against W. P. Kellogg, who was governor of the state of Louisiana, Charles Clinton, who was auditor of public accounts of the state of Louisiana, Antoine Dubuclet, who was treasurer of the state of Louisiana, and the Louisiana National Bank, all of the defendants being citizens of the state of Louisiana. The bill averred, in substance:

That complainant was the holder and owner of bonds of the state of Louisiana,

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission. 1 Cent. Law J. 164, contains only a partial report.]

amounting in the aggregate to $71,000, which were issued under three different acts of the legislature, authorizing their issue and providing for the levy of a tax for the payment of principal and interest thereof, and appropriating the means raised by such tax to that purpose and no other. That complainant purchased his bonds upon the faith of the contracts contained in the acts referred to, and especially upon the faith of the provisions of the general act of March 16, 1870, by which it was provided that the auditor of public accounts should, at the end of each year, estimate what sum, levied upon the entire taxable property of the state, would be sufficient to pay the interest on all bonds issued by the state, and that the sum so ascertained was thereby annually levied upon the taxable property of the state; that the tax so levied should be collected as other taxes, and should be known as the "interest tax," and when paid into the treasury should be credited to a fund to be called the "interest tax fund," and should be held sacred for the payment of the interest upon the bonds of the state. That complainant purchased all of said bonds on the faith of article 114 of the constitution of the state of Louisiana, adopted in 1864, and of article 111 of the constitution adopted in 1868, which provide, "that whenever the legislature shall contract a debt exceeding in amount $100,000, unless in case of war, to repel invasion, or suppress insurrection, they shall, in the law creating the debt, provide adequate ways and means for the payment of current interest and of the principal when the same shall become due, and the said law shall be irrepealable until principal and interest are fully discharged, unless the repealing law contain some other adequate provision for payment of principal and interest of the debt;" and also on the faith of article 110 of the constitution of 1868, forbidding the passage of any law impairing the obligation of a contract or divesting vested rights; and upon the faith of the provision of the constitution of the United States prohibiting a state to pass any law impairing the obligation of contracts; that more than $100,000 of bonds had been issued under each of the laws under which the bonds held by complainant had been put forth. That none of the foregoing contracts had been performed, but, on the contrary, defendants Kellogg, Clinton and Dubuclet, had given out, that no interest maturing after December 31, 1873, on the bonds of the state, issued before that date, should be paid, nor should any principal of said bonds be redeemed; and had given out and declared, that they would not levy and collect the taxes provided by the aforesaid special contracts of the state, and would not set apart the special and sacred funds therein agreed to be set apart, and would not redeem any principal of said bonds. That said Kellogg, Clinton and Dubuclet had given out, that their past and proposed violation of the con-

tracts of the state, as above set forth, had been and were to be carried out under a plan to fund the state debt. That in pursuance of this plan, they had persuaded the legislature to pass an act known as the "Funding Bill," being Act No. 3, approved January 24, 1874.

This act provided in substance for the issue of bonds of the state, to be known as consolidated bonds, to the amount of $15,000,-000, which should be used for the purpose of taking up the bonds and warrants of the state, issued previous to its passage, at the rate of 60 cents of the new bonds to one dollar of the outstanding bonds and warrants, and for a tax of five and a half mills to pay the principal and interest of the new bonds, and declared that the total tax for interest and all other state purposes, except public schools, should never exceed twelve and a half mills. This act, the bill of complaint alleged, the defendants proposed to execute, and pretended it was their duty so to do, whereas the said act was a nullity, because it was in violation of the constitution of the state of Louisiana, and of the constitution of the United States, in that it impaired the obligation of the said contracts made by the state of Louisiana with complainant and other holders of the bonds of the state; that said Act No. 3 of the year 1874 purported at once to do away with all taxes theretofore levied and which it was agreed should be collected for interest and principal of complainant's bonds and other bonds theretofore issued, and to substitute a tax of five and a half mills only for the payment of the principal and interest of said consolidated bonds, whereas the bonds of the state theretofore issued amounted to the sum of $22,433,800, and to comply with the contracts under which they have been issued would require an annual tax of eleven and a half mills on the dollar. That it was the unlawful purpose of said act, and the defendants so construed and were about to execute it, to repudiate all of said contracts made with complainant and other holders of the bonds of the state with reference to the levy and collection of taxes for the principal and interest of said bonds, to nullify and hold for naught the said laws under which the outstanding bonds have been issued, to collect in future only five and a half mills of interest tax, which was less than half what was required to fulfill all the contracts under which the bonds outstanding had been issued, and to apply the proceeds of this inadequate tax, not to the bonds held by complainant and others, but to the so-called new consolidated bonds to be thereafter issued to the extent of $15,000,000.

The bill further alleged that there were in the treasury $500,000 interest-tax funds, and large additional amounts belonging to said tax funds should be received monthly and quarterly; but defendants had given out and declared that they would have no further use for said special funds, as they would pay no

more interest maturing after December 31, 1873, on the outstanding bonds of the state. That these acts and declarations of the defendants were with the intent to coerce complainant and other holders of the bonds of the state to acquiesce in the said "funding" scheme; that unless restrained, they would actually and positively violate the obligations of the several contracts herein set forth, and would refuse payment of all coupons maturing after December 31, 1873, on outstanding bonds, and suspend and refuse the redemption of said bonds.

The bill prayed that defendants might be restrained from executing said Act No. 3 of 1874, from reducing the interest tax, which it was heretofore agreed should be collected for the present and future years, for the interest and principal of the state bonds now outstanding, in anywise except in strict accordance with the laws under which they were issued; from hindering or delaying the estimate and collection of taxes for interest and sinking funds, under the said laws of the general assembly, from in anywise hindering or delaying the payment of any interest coupons of any of the said outstanding bonds of the state under any of the pretenses or devices of said Act No. 3, and from in any way hindering or delaying the estimate and collection of interest and sinking funds provided for by law prior to the adoption of said Act No. 3 of 1874, the payment of the interest thereunder, or the redemption of the principal of said bonds.

The bill further prayed that the defendants might be decreed to comply with and specifically perform the contracts of the state, by setting apart the funds agreed therein to be set apart, by estimating the amount of tax required to comply with said contracts; by collecting the same as provided by said contracts; by depositing and holding the proceeds of the same according to said agreements, and by paying the interest on said bonds as it should mature, and redeeming the principal thereof according to said agreements.

An amended bill set out the provisions of an act, No. 55, passed by the general assembly of Louisiana, and approved March 14, 1874, the general purpose and effect of which was to forbid and prevent any officer of the state from assessing, collecting or enforcing the payment of any tax for the payment of the principal and interest of the state debt, the assessment and collection of which were not specially provided for by some act of the general assembly passed since the first day of January, 1874, and to forbid the governor, auditor and treasurer from setting apart any funds for the payment of the principal or interest of any bonds issued prior to January 1, 1874.

Several persons holding bonds of the state of Louisiana filed petitions, praying to be made parties complainant, which it is unnecessary particularly to notice. Upon these bills, original and amended, the complainant moved the court to issue the injunction prayed for in the original bill.

W. W. Howe and J. H. Kennard, for complainants.

W. H. Hunt, T. J. Semmes, and E. C. Billings, for defendants.

WOODS, Circuit Judge. It is obvious to remark that there are insuperable objections to so much of the prayer for relief as asks that the defendants may be decreed to comply with and specifically perform the contracts of the state by estimating and collecting the interest and sinking fund tax, and applying it to the payment of the principal and interest of the bonds. The objection is, that if there is a remedy at all, it is a remedy at law, namely, by the issuance of the writ of mandamus. If this suit were brought against a municipal corporation and its officers, to compel the collection of a tax to pay the interest on its bonds, the plain, adequate and complete remedy would be the legal writ of mandamus. It is true that before the writ could issue, the bondholders must have recovered a judgment at law on their bonds. Bath County v. Amy, 13 Wall. [80 U. S.] 247; Graham v. Norton, 15 Wall. [82 U. S.] 427. It may be replied to this that the bondholders cannot lay the necessary foundation for the writ of mandamus in the United States courts because they are prohibited from suing the state, by the 11th amendment to the constitution of the United States. But this fact may prove that there is no remedy for the complainants in the United States courts. It certainly does not follow that because there are obstacles to the adoption of the plain legal remedy, therefore the remedy is in equity. It might as well be claimed that because the bondholder could not go into a court of law and secure a judgment against the state upon his bonds, he might therefore go into equity and seek a decree against the officers of the state for the amount due on his bonds. When the 11th amendment to the constitution declares, "that the judicial power of the United States shall not be construed to extend to any suit at law or in equity commenced or prosecuted against one of the United States by citizens of another state, or subjects of any foreign state," the purpose is clear to exempt states from suits upon their contracts, either at law or in equity, and the fact that this amendment interposes an obstacle to a suit at law against a state does not give a court of equity jurisdiction to enforce the same contract on the pretext that there is no remedy at law. Suits in both forums against a state are prohibited. It is evident, therefore, that should this bill come on for final hearing, the decree prayed for could not be granted.

We may, however, consider the bill as one for injunction only, and the question now presented is, can and ought the court to al-

low the injunction to go as prayed for? It is claimed by the bill and conceded by counsel for defendants that the bonds of the state of Louisiana held by the complainants are contracts, that the laws under which these bonds were issued, and which provide for the levy and collection of taxes to pay the interest and reduce the principal, and which declared that the same should be annually continued until the principal and interest of said bonds were fully paid; that these provisions of law entered into and formed a part of the contract between the state and the bondholder, just as completely as if the terms themselves were inserted in the body of the bonds. The state has therefore contracted that at a certain date named in the bonds she will pay the principal, that in the meantime she will pay the interest semi-annually to the holder of the bonds, and as an assurance that this part of her contract will be performed, she promises further that she will levy and collect an annual tax to make these payments, and that the revenue raised by this tax shall be set apart for the purpose of paying said interest and principal. It is conceded that the state has made this contract with the complainant in this case. Now to what end is the injunction sought in this case? It is: To compel the officers of the state to execute the contracts of the state by estimating, levying, collecting and applying to the payment of the bonds the tax originally provided by law for the payment of the interest and the redemption of the principal. It is true the prayer for injunction is that the officers of the state may be restrained from hindering or delaying the estimate, levy and collection of the tax, etc. But as the defendants are the officers whose duty it is to estimate, levy and collect, it is clear that such an injunction from this court would be mandatory and compel the performance of affirmative acts. [Second, to restrain the state officers from receiving delinquent taxes in auditor's warrants instead of lawful money of the United States.] [2]

The first question presented by the prayer for injunction is, can the officers of the state be compelled by injunction to do an affirmative act? The complainant claims that the funding bill and the act of March 14, 1874, which in effect prohibit the collection of taxes for the payment of the principal and interest of the outstanding bonds of the state, are unconstitutional and therefore void. If this be conceded, then the case is in the same plight as if these acts just named had never been passed, and as if the officers of the state, without pretense of warrant of law, were refusing to levy and collect the taxes which the state had agreed should be levied and collected and applied to the payment of these bonds. Has this court the power to compel them by mandatory injunction to do an affirmative act? The authorities are adverse. The case of Walkley v. City of Muscatine, 6 Wall. [73 U.

S.] 483, was a bill in equity to compel the authorities of the city of Muscatine to levy a tax upon the property of the inhabitants for the purpose of paying the interest on certain bonds issued by the city. It appeared that a judgment had been recovered in the same court against the city for $7,666, interest due on the bonds held by plaintiff; that execution had been issued and returned unsatisfied, no property being found liable to execution; that the mayor and aldermen had been requested to levy a tax to pay the judgment, but had refused; that the city authorities possessed the power under their charter to levy a tax of one per cent. on the valuation of the city property, and had made a levy annually, but had appropriated the proceeds to other purposes, and had wholly neglected to pay the interest upon the bonds. The bill prayed that the mayor and aldermen might be decreed to levy the tax and appropriate so much of the proceeds as might be sufficient to pay the judgment, interest and costs. Upon this case the supreme court says: "We are of opinion that complainant has mistaken the appropriate remedy in the case, which was by writ of mandamus from the circuit court." We have been furnished with no authority for the substitution of a bill in equity and injunction for the writ of mandamus. An injunction is generally a preventive writ, not an affirmative remedy. It is sometimes used in the latter character, but this is in cases when it is used by the court to carry into effect its own decrees, as in putting the purchaser under a decree of foreclosure of a mortgage into possession of the premises. Even the exercise of this power was doubted till the case of Kershaw v. Thompson, 4 Johns. Ch. 609, in which the learned chancellor, after an examination of the cases in England on the subject, came to the conclusion he possessed it, not, however, by the writ of injunction, but by the writ of assistance.

[A consideration of the second branch of the injunction asked, namely, to restrain the state officers from receiving delinquent taxes in auditor's warrants, will show that this is an indirect way of praying for an injunction to compel the state officers to receive the delinquent taxes in lawful money of the United States, according to the contract of the state as claimed by complainants. The complainant would not be satisfied should the state officers suspend the receipt of state warrants. The evident purpose of this part of the injunction is to compel them to receive lawful money; for, unless the officers, after declining to receive auditor's warrants, proceed to collect the taxes in lawful money, the complainant would take no advantage from his motion.] [2]

In Rogers Locomotive Works v. Erie Railway Co., 20 N. J. Eq. 379, the court, after a learned review of all the cases, both English and American, bearing upon the sub-

---

[2] [From 1 Cent. Law J. 164.]

[2] [From 1 Cent. Law J. 164.]

ject, announced the conclusion that a mandatory injunction will not be ordered upon a preliminary or interlocutory motion, but only upon final hearing, and then only to execute the decree or judgment of the court. It is only in cases of obstruction to easements or rights of like nature, that maintaining a structure as a means of preventing their enjoyment will be restrained, and the structure ordered to be removed as part of the means of restraining the defendant from interrupting the enjoyment of the right. To the same effect is the case of Audenreid v. Philadelphia & Reading R. Co., 68 Pa. St. 370.

It is clear to my mind that the injunction asked for falls within the category of mandatory injunctions, and cannot therefore be granted on motion. But the fatal objection to the motion of complainant is found in the character of his bill. It is either a suit in effect against the state of Louisiana, or if not, the parties defendant are merely nominal parties, having no real interest in the controversy. In either case, no decree can be made in the cause. This case is clearly distinguishable from the cases of Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 738, and Davis v. Gray, 16 Wall. [83 U. S.] 203, and other cases cited by complainant. In the case of Osborn v. Bank [supra], the bill was filed by the bank to restrain Osborn, who was auditor of the state of Ohio, from acting under a void law of a state in the collection of a tax levied upon the bank, and for a decree against Curry, the late treasurer, and Sullivan, the incumbent treasurer, and Osborn, the auditor, for money illegally collected by them from the bank. It was alleged in the bill that neither Curry nor Sullivan held the money as officers, but individuals. The court in this case held that the suit was well brought, because the state was not nominally a party to the record, and the parties made defendant had a real interest in the cause, since their personal responsibility was acknowledged, and if denied, could be demonstrated. In the case of Davis v. Gray [supra], Davis, who was defendant in the court below, and who was named upon the record as governor of Texas, was sought to be enjoined from casting a cloud upon the title of complainant to certain lands in Texas, by locating warrants thereon in pursuance of a void and unconstitutional enactment of the state. Although he professed to act as governor, he was impairing the rights of complainant without the authority of any valid law; he was acting in his own wrong and upon his own responsibility, and was personally liable. In both these cases the object was to restrain individuals holding public offices from doing acts to the injury of complainant, for which there was no legal warrant, and by the doing of which they incurred a personal liability. How different is the case under consideration. Here is an attempt to compel the public officers of a state

to do positive and affirmative acts as such, to compel them to carry out what the complainant conceives to be the law of the state, not in accordance with their own sense of duty, and their own interpretation of the law. In the case of Kentucky v. Dennison, Governor, 24 How. [65 U. S.] 109, it was held that neither the congress nor the courts of the United States could coerce a state officer, as such, to perform any duty imposed upon him by act of congress. Does it not follow, a fortiori, that a court of the United States cannot compel the governor of a state to execute a law passed by the state? In Osborn v. Bank, and Davis v. Gray [supra], it was held that a United States circuit court might, in a proper case in equity, enjoin a state officer from executing a state law in conflict with the constitution, or a statute of the United States, when such execution would violate the rights of complainant. But no case has yet decided that a circuit court of the United States can compel the executive and administrative officers of a state to execute the laws of the state. The dilemma is this: If the suit is against the defendants in their official character, and the claims made upon them are in their official character, the state may be considered a party to the record. Madrazo v. Governor of Georgia, 1 Pet. [26 U. S.] 110. If the suit is against the officers as individuals merely, and the offices they hold are given merely to describe their persons, they have no interest in the subject matter, and no decree should go against them.

In the view I have taken of the case, I have conceded what complainants claim, that the funding bill and the act of March 14, 1874, are both unconstitutional and void, and have regarded the bill just as if those acts had never been passed, to-wit, a bill to compel the defendants, officers of the state, to execute its laws. This may be done in the case of the officers of municipal corporations, but the sovereign power of a state cannot be so coerced. To do so would be to substitute this court for the executive officers of the state, to supplant their views of duty and the obligations imposed upon them by their official oath, by the discretion of this court and its official oath. In other words, it would be an undertaking upon the part of this court to administer the state government. This the court has no power and no inclination to do. In my judgment, this is to all intents and purposes a suit against the state. The officers of the state, including the chief executive, are sued in their official capacity to compel them to execute the laws of the state. It is a suit to enforce a contract of the state to pay money. The officers are not sued as individuals who happen to be in public office, to prevent them from doing some act to the prejudice of complainant not warranted by law, as was the case in Osborn v. Bank of U. S. and Davis v. Gray. If a suit like this can be sustained, then the 11th amendment

to the constitution of the United States is waste paper. For the reasons stated, the motion for injunction is overruled.