### AMERICAN LEAD PENCIL CO. v. SCHNEEGASS.

(Circuit Court. N. D. Georgia. April 20, 1910.)

#### No. 1,313.

**1. INJUNCTION (§ 133*)—PRELIMINARY INJUNCTIONS—MANDATORY INJUNCTION.**

The object of a preliminary injunction is to preserve the status which exists at the time the bill is filed, and a mandatory injunction will not be granted on a preliminary hearing, except in rare instances and in a clear case.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 302; Dec. Dig. § 133.*]

**2. INJUNCTION (§ 133*)—PRELIMINARY INJUNCTIONS—MANDATORY INJUNCTION.**

Defendant, while in the employ of complainant, signed a contract by which he agreed that, in consideration of his employment, should it terminate, he would not for a period of three years enter the employment of any one engaged in a similar line of manufacture, nor use his knowledge of the secret processes, etc., of complainant for the benefit of any such person. The continued employment of defendant at the same rate of pay was the only consideration for such agreement. Later defendant quit and entered the employ of a rival concern, and complainant filed a bill for an injunction to restrain him from violation of his contract. Defendant denied that he had disclosed or intended to disclose any of the trade secrets of complainant, in which he was supported by affidavits of his employers. *Held* that, while complainant might have a preliminary injunction restraining such disclosure, in view of the doubtful questions of law and fact involved, the court would not, in advance of final hearing, grant a mandatory injunction requiring defendant to leave his employment.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 302; Dec. Dig. § 133.*

Restraining breach of contract by employé to not engage in competing business, see note to Harrison v. Glucose Sugar Refining Co., 53 C. C. A. 492.]

In Equity. Suit by the American Lead Pencil Company against Emil Schneegass. On motion for preliminary injunction. Motion granted in part.

---

V. A. Batchelor, for plaintiff.
Herbert Haas and Rosser & Brandon, for defendant.

NEWMAN, District Judge. This is an application for an injunction pendente lite in the above-stated case. The hearing has been on the bill, answer, affidavits, and other evidence submitted by the respective parties.

The facts are that Emil Schneegass, the defendant, had been for a number of years in the employ of the American Lead Pencil Company, and had become familiar, while so engaged, with certain trade secrets, secret devices, secret processes of manufacture, and secret formulæ, the exclusive property of said company. It further appears that on March 28, 1908, he signed an agreement as follows:

"In consideration of receiving employment from the American Lead Pencil Company, I hereby agree that, should I desire to leave their employ at any future time, I will give them six (6) months' notice in writing of such intention."

And on the 2d day of October, 1908, he signed a contract as follows:

"In consideration of receiving employment from the American Lead Pencil Company, I hereby agree that, should my employment by that company terminate at any future time, I will not for a period of three years thereafter enter the employ, either directly or indirectly, of any one interested in the manufacture of pencils, penholders, erasers, or similar articles, or use the knowledge I have gained for the benefit of such party."

No particular consideration was paid him for signing these agreements, he simply continuing in the employ of the company under the same conditions and at the same pay that he was receiving before. On the 21st of October, 1909, he left the employ of the American Lead Pencil Company, and came to Atlanta and entered the employ of the National Lead Pencil Company, a rival manufacturer of lead pencils, etc.

The complainant in its bill alleges that it is informed and believes that the circumstances surrounding the acts of defendant in leaving its employ and entering the employ of its business rival, and his subsequent acts, are calculated to obtain and secure to such business rival, for its benefit, the trade secrets, secret devices, secret processes of manufacture, and secret formulæ belonging exclusively to the plaintiff, to the substantial destruction of complainant's property in the same, and to complainant's irreparable injury, by disclosing the same, by means difficult to discover, to its rival in business.

The defendant denies that he is using, or that he holds himself ready to use, if permitted to do so, for the benefit of the National Lead Pencil Company, his knowledge, acquired while in the employ of complainant, of complainant's trade secrets, secret devices, secret processes of manufacture, and secret formulæ, to the substantial destruction of complainant's property in same, and to complainant's irreparable injury, and alleges that he is not using, nor seeking to use, and has not disclosed, nor is it his purpose to disclose, complainant's trade secrets, secret devices, secret processes of manufacture, and secret formulæ of which he has knowledge, but that all such knowledge has been kept secret by him, and it is his purpose to so keep it. He also denies that

such trade secrets, secret devices, secret processes of manufacture, and secret formulæ can be either used or disclosed to others in such a way as to make it difficult to discover such use and disclosure, but that, on the contrary, any such use could be readily detected and prevented.

Affidavits were submitted pro and con in support of the contentions of the parties. All the principal officers of the National Lead Pencil Company deny expressly that they are using or desire to use any of the trade secrets, secret devices, secret processes of manufacture, or secret formulæ of the American Lead Pencil Company, or that they have obtained from Schneegass, or desire to obtain from him, any of the trade secrets of the American Lead Pencil Company; that their machines and methods are such that it would be impossible for them to use any of the methods of the American Lead Pencil Company to any advantage.

The gentlemen making these affidavits are wholly unimpeached, and, so far as the record discloses, are gentlemen of character and standing. So, also, of course, so far as the record discloses, are the officers of the American Lead Pencil Company; but a square issue of fact is made as to whether or not Schneegass is doing anything or can do anything in the way of divulging trade secrets to the injury of the American Lead Pencil Company.

A number of interesting questions are involved in the case, among them the following: Whether the agreement made by Schneegass with the American Lead Pencil Company on the 2d of October, 1908, is invalid for want of consideration to support it, or whether the retention by the company of Schneegass in its employ is a sufficient consideration; whether the agreement, made October 2, 1908, not to enter the service of another company for three years, is valid and binding, because, although limited as to time, it is unlimited as to space, covering employment anywhere in the world, so far as its terms go; whether the law of New Jersey is against the validity of such an agreement as those in question here; whether the law and public policy of Georgia is against the enforcement of such contracts in Georgia; whether the United States Circuit Court, in Georgia, sitting in equity, would recognize the law of Georgia and enforce the same, where it is contrary to the general law of the country and general equity principles, and what is the general law on the subject—that is, the law existing throughout the United States. These are some of the interesting questions raised on the argument at the bar and in the well-prepared briefs of counsel for both parties which have been since submitted to the court.

The first question to determine is whether the court, in view of the character of the case, as above suggested, will, on an application for an injunction pendente lite, and before the final hearing in the case, go further than to maintain the status quo, and grant what would be, in effect, a mandatory injunction at this stage, and thereby compel the defendant, Schneegass, to leave the employ of the National Lead Pencil Company. In this connection it may be stated that the complainant, by an amendment, has offered to take Schneegass back into its service. This offer is perfunctory in character, however, and could hardly mean much for Schneegass in the future, in view of the attitude and feeling toward him by the representatives of the complainant company.

178 F.—47

But the court found him, at the time this bill was filed, in the employ of the National Lead Pencil Company, and an order such as is insisted upon by the complainant's counsel, while it would, as the order is suggested, restrain him from continuing in the employ of the National Lead Pencil Company, its result and effect, of course, would be to require him to leave such employ, and to that extent be mandatory in character. In Cyc. vol. 22, p. 743, the rule with reference to mandatory injunctions on preliminary hearing is stated in this way:

"Since an injunction mandatory in its nature generally does more than to maintain the status quo, it is generally improper to issue such an injunction prior to final hearing; and it is frequently said that such a preliminary injunction will never issue. For instance, it is improper to issue a preliminary injunction, the effect of which will be to compel the transfer of property from one litigant to another. On the other hand, there is no doubt that the court has jurisdiction to issue preliminary mandatory injunctions, and it is proper to do so in cases of extreme urgency, where the right is very clear indeed, and where considerations of the relative inconvenience bear strongly in complainant's favor. If the issuance on preliminary application of an injunction mandatory in nature will have the effect of ·granting to the complainant all the relief that he could obtain upon a final hearing, the application should be refused, except in very rare cases. and then only where the complainant's right to the relief is clear and certain."

In Grand Castle of the Golden Eagles of New· Jersey v. Bridgeton Castle, No. 13, Knights of the Golden Eagles of State of New Jersey, 40 Atl. 849, Grey, V. C., speaking for the Court of Chancery of New Jersey, says:

"I am not satisfied that an injunction ought to go in this case. The answer sets up points which suggest some questions of law; also makes denials of the material facts alleged in the complainant's bill, on which the complainant's equity depends. * * * Nothing in the bill leads me to believe that there may be any very serious loss or injury between this time and the final hearing, when the court will be able fully to know whether the complainant is entitled to the remedy it seeks, and what form it should take. * * * It may be that all· this very broad exercise of the restraining and mandatory power of this court may ultimately be justly called for, but I cannot say that I ·am satisfied that they should be allowed on this preliminary hearing. Mandatory injunctions ought not to be granted until final hearing, unless the situation indicates an absolute necessity for their use in the preservation of the rights of the parties."

In Thomas v. Hawkins, 20 Ga. 126, 134, the Supreme Court of Georgia referred to the right to grant preliminary mandatory injunctions in this language:

"The last ground taken in the motion to dissolve the injunction was that the injunction was ·affirmative—directing acts to be done by the party enjoined. 'It is to be observed that the court will not, by an injunction granted upon an interlocutory application, direct the defendant to perform an act.' 'In the case of Ryder v. Bentham, Lord Hardwicke, upon a motion for an order to pull down certain blinds, observed that he never knew an order to pull down anything, on motion. Lord Thurlow, in a subsequent case, upon a motion to restrain a party from digging a ditch, and to compel him to put everything in the same state in which it was before, by filling up so much as he had already dug, refused the latter part of the motion. So, in another case, Lord Eldon refused an order specifically to repair the banks of a canal, stop gates and other works.' This is the language of Daniell in his work on Chancery Practice; and we think it contains a true statement of the law on the question to which it refers, which is the question now under consideration. 3

Dan. Ch. Pr. 343. If it does, then this makes another reason why the injunction was improperly granted, for the injunction directs the defendant in the bill to remove the obstructions from the road."

In McCauley v. Kellogg, 2 Woods, 13, Fed. Cas. No. 8,688, Judge Woods, Circuit Judge for the Sixth circuit, discusses this question. So much of the language of the opinion as is pertinent here is as follows:

"An injunction is generally a preventive writ, not an affirmative remedy. It is sometimes used in the latter character, but this is in cases when it is used by the court to carry into effect its own decrees, as in putting the purchaser under a decree of foreclosure of a mortgage into possession of the premises. Even the exercise of this power was doubted till the case of Kershaw v. Thompson, 4 Johns. Ch. [N. Y.] 609, in which the learned Chancellor, after an examination of the cases in England on the subject, came to the conclusion he possessed it, not, however, by the writ of injunction, but by the writ of assistance. * * * In Rogers Locomotive Works v. Erie Railway Co., 20 N. J. Eq. 379, the court, after a learned review of all the cases, both English and American, bearing upon the subject, announced its conclusion that a mandatory injunction will not be ordered upon a preliminary or interlocutory motion, but only upon final hearing, and then only to execute the decree or judgment of the court. It is only in cases of obstruction to easements or rights of like nature that maintaining a structure as a means of preventing their enjoyment will be restrained, and the structure ordered to be removed as part of the means of restraining the defendant from interrupting the enjoyment of the right. To the same effect is the case of Audenried v. Philadelphia & Reading R. Co., 68 Pa. 370 [8 Am. Rep. 195.] It is clear to my mind that the injunction asked for falls within the category of mandatory injunctions, and cannot, therefore, be granted on motion."

The effect of an order now enjoining Schneegass from continuing in the service of the National Lead Pencil Company would be to decide on this application for an injunction pendente lite the merits of the case; that is, to give the complainant all he could obtain by this bill on a final hearing. The object of a preliminary injunction is to preserve the status which exists at the time the bill is filed. I do not see how it is possible for Schneegass to do anything, pending the hearing in this case and the final determination of the same, to injure the complainant to any great extent, unless the facts stated by the officers and agents of the National Lead Pencil Company, and presented here by affidavits, are absolutely false in every particular. An injunction pendente lite, restraining Schneegass from divulging to the National Lead Pencil Company any information of a secret, confidential nature, relating to complainant's secret machines, secret devices, secret processes of manufacture, and secret formulæ, taught to and acquired by him while in the employ of complainant, and from communicating with complainant's employés with respect to complainant's trade secrets, secret devices, secret processes of manufacture, and secret formulæ, and from interfering with, enticing away, or undertaking to entice away complainant's employés, familiar with its secret machines, secret devices, and secret processes of manufacture, is as far as the court would be justified in going on the present hearing.

The case should be referred to a master in chancery, and it should proceed as rapidly as is consistent with its proper hearing and determination, so that the rights of the parties may be settled and the case determined at an early date.