256 F.2d 410
 MIAMI BEACH FEDERAL SAVINGS AND LOAN ASSOCIATION et al.,
Appellants and Cross- Appellees,
v.
Ralph M. CALLANDER et al., Appellees and Cross-Appellants.
Ralph M. CALLANDER et al., Appellants and Cross-Appellees,
v.
MIAMI BEACH FEDERAL SAVINGS AND LOAN ASSOCIATION et al.,
Appellees and Cross-Appellants.
 No. 17133.
 United States Court of Appeals Fifth Circuit.
 June 17, 1958, Rehearing Denied Aug. 11, 1958.
 
 David W. Dyer, Miami, Fla., Ray E. Dougherty, Washington, D.C., Samuel A. Brodnax, Jr., Miami, Fla., for appellants.
 J. Edward Worton, Miami, Fla., for appellees.
 Before HUTCHESON, Chief Judge, and TUTTLE and WISDOM, Circuit Judges.
 TUTTLE, Circuit Judge.
 
 
 1
 This is an appeal from an order and judgment of the district court, inter alia, directing that a special meeting of the shareholders of the Miami Beach Federal Savings and Loan Association be held for the purpose of electing directors to replace resigned directors and to fill the vacancies caused by an increase in the number of the directorate.
 
 
 2
 The suit was brought in the nature of a stockholders derivative action for a declaratory judgment as well as for temporary and permanent injunctions. The defendant Federal Home Loan Bank Board (hereinafter, the Board), is an agency of the United States Government, created and existing pursuant to the provisions of the Home Owners' Loan Act of 1933, 12 U.S.C.A. 1461 et seq., charged by law with the examination, supervision and regulation of federal savings and loan associations. 12 U.S.C.A. 1464(a). It does not question its suability in this district. The defendant, Miami Beach Federal Savings and Loan Association (hereinafter, the Association), is a federal savings and loan association, organized, incorporated and chartered by the Board. Individual defendants, Mitchell Wolfson, Henry D. Williams, John E. Shuey, Carl Weinkle and Claude A. Renshaw are presently serving as directors of the Association, having been elected by the board of directors on February 11, 1958.[1] Jurisdiction is asserted on a provision of the Home Owners' Loan Act. 12 U.S.C.A. 1464(d)(1).
 
 
 3
 The complaint alleges in substance that upon demand by representatives of the Board, the board of directors of the Association on January 24, 1958, amended the by-laws of the Association so as to increase the directorate from eight to ten in number and certain members of the board of directors thereafter submitted their resignations. Upon further demand by representatives of the Board the individual defendants in this suit were elected to fill vacancies in the directorate resulting from the increase in number of directors and from the resignations.[2] It is alleged that the election was in complete and utter disregard of the charter and by-laws of the Association and of the rights of the members to be afforded the privilege of electing directors and that the actions of the representatives of the Board were arbitrary and capricious and in some vague and generalized way denied to the Association and its members due process of law as guaranteed by the Fifth Amendment of the United States Constitution.
 
 
 4
 The plaintiffs cite the following, which is Section 5 of the Charter of the Association as well as a regulation of the Board, as granting the power of election of directors to the stockholders:
 
 
 5
 'The association shall be under the direction of a board of directors of not less than 5 nor more than 15, as fixed in the association's by-laws or, in the absence of any such bylaw provision, as from time to time expressly determined by resolution of the association's members. Each director of the association shall be a member of the association, and a director shall cease to be a director when he ceases to be a member. Directors of the association shall be elected by its members by ballot: Provided, That in the event of a vacancy in the directorate, including vacancies created by an increase in the number of directors, the board of directors may fill such vacancy, if the members of the association fail so to do, by electing a director to serve until the next annual meeting of the members * * *.'[3]
 
 
 6
 The complaint further alleges that one of the plaintiffs on behalf of other shareholders requested the president of the Association in writing to comply with Article 2[4] of the by-laws in calling a special meeting of the shareholders upon the request of members holding 10% of the capital of the Association. Plaintiffs admitted at the hearing in the district court and during oral argument before this Court that they did not, at present or when they submitted the request, have the requisite 10% and that at least 30 days would be required to obtain the approval of sufficient shareholders to comply with the requirement, if their construction of the by-law is correct.
 
 
 7
 The prayer of the complaint is that pending final determination a preliminary injunction be issued restraining the Board and its representatives from supervising, conducting or otherwise interfering with the members of the Association in their right to elect directors and restraining the newly elected members of the board of directors from taking any further action with respect to the affairs of the Association. It asked that the preliminary injunction provide that the Association operate under the directorship of the four remaining 'old' directors until final determination. The complaint prayed that the Board and its representatives be permanently enjoined from threatening to bring, without proper administrative procedure, any action against the Association. It asked that the court decree that members of the Association be accorded the right to elect members to fill any vacancies on the board of directors caused by the resolution increasing the number of directors or by the resignations of existing directors and that the election of the 'new' directors was contrary to the charter and by-laws of the Association.
 
 
 8
 The defendants moved to dismiss the complaint for failure to state a claim upon which relief may be granted and to strike portions of the complaint alleging activities on the part of the Board which they claimed failed to assert a claim upon which relief may be granted as well as being immaterial and irrelevant.
 
 
 9
 On March 7, 1958, the district court heard arguments upon the motions for preliminary injunction by the plaintiff and motions to dismiss and strike by the defendants. No answers were filed by the defendants by that date, as their time to do so had not yet expired. No evidence was presented at the hearing as none was offered to or requested by the court.
 
 
 10
 The district court's order of March 11, 1958 directed that a special meeting of shareholders of the Association be held on March 27, 1958, for the purpose of electing directors to replace the directors elected by the board of directors on February 11. The court thus construed the charter as contended for by the plaintiffs, but gave them even more than they contended for by not even requiring the petition of 10 percent of the shareholders for the calling of the meeting. The judgment directed that the board of directors as presently constituted without the new members continue to function pending the special election. In enjoined the 'directors and former directors of the Association who are presently under indictment in this Court'[5] from exercising any proxies which they may hold and from soliciting votes from others. It enjoined the newly elected directors from using funds or personnel of the Association in the solicitation of votes; enjoined the Board and its representatives from interfering with or supervising the special election; and it ordered that plaintiffs shall have the right to examine the shareholder records of the Association, at their own expense, for the purpose of the special election.[6]
 
 
 11
 In viewing the allegations of the complaint concerning the Federal Home Loan Bank Board and aided by the determination by the district court, which heard elaborations on them by the plaintiffs' attorney,[7] we are not really told that representatives of the Board did any more than they were authorized to do under the statute. The claimed fraud and duress are not averred with the particularity required by Rule 9(b), F.R.C.P., 28 U.S.C.A. See Texas Water Supply Corp. v. Reconstruction Finance Corp., 5 Cir., 204 F.2d 190.
 
 
 12
 Congress has provided the Board with authority to make policy, including rules and regulations for the organization, incorporation, examination, operation, supervision and regulation of the associations. See12 U.S.C.A. Sec. 1464(a) set out in the margin.[8] Fahey v. Mallonee,332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030; Home Loan Bank Board v. Mallonee, 9 Cir., 196 F.2d 336. Further, are provided powers for the Board to enforce its rules and regulations.[9] According to the statute the Board can submit a written notice of a violation to an association, conduct a full hearing, decide the issue, and then appeals lie as provided by the Administrative Procedure Act, 5 U.S.C.A. 1001 et seq. Pursuant to its statutory grant the Board has adopted comprehensive rules and regulations concerning the powers and operations of every federal savings and loan association from its inception to its dissolution. Title 24, Code of Federal Regulations, 1949 Ed.Supp. Ch. I, subchapter C. When a governmental agency holds such great powers over its offspring, even to the point of appointing a conservator or receiver to replace the management, 12 U.S.C.A. Sec. 1464(d)(2), it is difficult to hold that an informal request, even demand, to clean house would amount to an abuse of the statutory powers and discretion of the agency.
 
 
 13
 Construing the vague allegations of the complaint most favorably to the plaintiffs, at the utmost there was a threat by the board representative to utilize the statutory had legal procedures and sanctions, if resignations of the directors under indictment were not tendered. Realistically, this appears to by the only pressure a representative of the Board could exert.[10] We are of the opinion that the portions of the complaint alleging illegal activities on the part of the Board should have been stricken.
 
 
 14
 Upon analyzing the trial court's order, issued without any evidence being submitted, even though perhaps at least partially at the instigation and insistence of the litigants, it appears much broader than the relief requested and than the question at hand. The matter before the court was a motion for a preliminary injunction which by its nature has the purpose of preserving the status quo to prevent irreparable injuries until the merits of the issues can be decided. Seagram-Distillers Corp. v. New Cut Rate Liquors, 7 Cir., 221 F.2d 815, certiorari denied 350 U.S. 828, 76 S.Ct. 59, 100 L.Ed. 740; Missouri-Kansas-Texas R. Co. v. Randolph, 8 Cir., 182 F.2d 996; Meiselman v. Paramount Film Distributing Corp., 4 Cir., 180 F.2d 94. There was no showing in this case of threat of irreparable injuries or the necessity requiring the calling of a special meeting of the stockholders and election of directors if this manner. Furthermore even an order for a preliminary injunction requires as a prerequisite a hearing, Rule 65(b), F.R.C.P., which is interpreted to mean a hearing of the facts pertinent to a decision on the motion. Hawkins v. Board of Control of Florida, 5 Cir., 253 F.2d 752; Sims v. Greene, 3 Cir., 161 F.2d 87.
 
 
 15
 The judgment awarded appers to provide the plaintiffs with practically all of the relief, if not more, than they sought on the merits, in granting the stockholders the right to fill vacancies of the board of directors occurring between annual meetings, and this at a meeting called by the court without the requisite number of shareholders requesting it. It further restrains an agency of the United States Government from exercising its statutory functions merely on unproven and vague allegations that representatives of the agency acted improperly, and it adjudicates rights of, and enjoin, persons not even parties to the litigation. A mandatory injunction of this nature, especially at the preliminary stage of proceedings, should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party. American Lead Pencil Co. v. Schneegass, C.C., 178 F. 735; Zugsmith v. Davis, D.C.S.D.N.Y., 108 F.Supp. 913; Gamlen Chemical Co. v. Gamlen, D.C.W.D.Pa., 79 F.Supp. 622. Here the dispute concerning the proper interpretation of Section 5 of the Charter is real; the defendants have even offered to submit proof of an established administrative interpretation in their favor. This issue should be resolved before an injunction is issued.
 
 
 16
 We have repeatedly held that an order for a temporary injunction does not and cannot decide the merits of the case. Board of Supervisors of La. State University & Agr. and Mechanical College v. Ludley, 5 Cir., 252 F.2d 372; Mansfield Hardwood Lumber Co. v. Johnson, 5 Cir., 242 F.2d 45; Lea v. Vasco Products, Inc., 5 Cir., 81 F.2d 1011. Furthermore since the plaintiffs admit noncompliance with Article 2 of the by-laws and acknowledge that they have not tendered a valid request for a stockholders special meeting, it appears that they are not even entitled to the calling of a meeting by their own interpretation of Section 5 of the Charter. The court seems to have taken over the operation of the Association at least for some purposes as would a receiver or trustee.
 
 
 17
 With the status of the record such as it is we must abrogate the order of March 11, 1958, as the relief granted is beyond the court's equity powers and beyond the relief requested or necessary in this instance. Upon remand the plaintiffs will have an opportunity to secure the requisite stockholders in compliance with Article 2 of the by-laws and be in a position to contest the interpretation of Section 5 of the Charter. Both parties should then be afforded an opportunity to present their factual evidence and legal arguments relevant to a determination of the merits in issue.
 
 
 18
 The judgment is reversed and the case remanded for proceedings not inconsistent with this opinion.
 
 
 
 [1]
 Other nominal defendants are the Federal Home Loan Bank of Greensboro, North Carolina, a bank established by the Board; Philip J. Mank, a representative and vice president of the Federal Home Loan Bank of Greensboro, North Carolina; and John M. Wyman and Mose Silverman, representatives of the Board
 
 
 [2]
 The final result appears to be that four directors resigned and five were elected at the February 11 meeting. The process employed was for one director to resign and another to be elected immediately so that at all times there were a quorum of directors in office and voting
 
 
 [3]
 The principal item of contention in the court below, which we do not reach, was whether this provision empowers the remaining directors to file vacancies on the directorate between annual meetings of shareholders of whether it requires the president, upon a proper request by the shareholders, to call a special meeting to allow the shareholders to elect interim directors
 
 
 [4]
 '2. Special meetings of members-- Special meetings of members of the association may be called at any time by the president or the board of directors, and shall be called by the president, a vice president, or the secretary upon the written request of members holding of record in the aggregate at least one-tenth of the capital of the association. Such written request shall state the purpose of the meeting and shall be delivered at the home office of the association addressed to the president * * *.'
 
 
 [5]
 Since no evidence of any indictments was presented, the court evidently found that they existed through judicial notice. It must be noted that these parties, four directors who resigned and one who did not, were not before the court in this suit
 
 
 [6]
 On March 12, 1958, pursuant to appellants' motion, this Court ordered a temporary stay of the district court's decree and advanced the cause on the calendar
 
 
 [7]
 The court found 'from the pleadings and from the argument thereon that the Federal Home Loan Bank Board or its representatives, in requesting the meeting of the old board of directors on the 11th day of February, 1958, was acting in what it thought to be the best interests to properly protect the shareholders.'
 
 
 [8]
 '(a) In order to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the financing of homes, the Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations,' and to issue charters therefor, giving primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States.' 12 U.S.C.A. 1464(a)
 
 
 [9]
 '(d)(1) The Board shall have power to enforce this section and rules and regulations made hereunder. In the enforcement of any provision of this section or rules and regulations made hereunder, or any other law or regulation, and in the administration of conservatorships and receiverships as provided in paragraph (2) of this subsection, the Board is authorized to act in its own name and through its own attorneys. The Board shall have power to sue and be sued, complain and defend in any court of competent jurisdiction in the United States or its territories or possessions or the Commonwealth of Puerto Rico. It shall be formal resolution state any alleged violation of law or regulation and given written notice to the association concerned of the facts alleged to be such violation, except that the appointment of a Supervisory Representative in Charge, a conservator or a receiver shall be exclusively as provided in paragraph (2) of this subsection. Such association shall have thirty days within which to correct the alleged violation of law or regulation and to perform any legal duty. If the association concerned does not comply with the law or regulation within such period, then the Board shall give such association twenty days' written notice of the charges against it and of a time and place at which the Board will conduct a hearing as to such alleged violation of duty. Such hearing shall be in the Federal judicial district of the association unless it consents to another place and shall be conducted by a hearing examiner as is provided by the Administrative Procedure Act. The Board or any member thereof or its designated representative shall have power to administer oaths and affirmations and shall have power to issue subpenas and subpenas duces tecum, and shall issue such at the request of any interested party, any the Board or any interested party may apply to the United States district court of the district where such hearing is designated for the enforcement of such subpena or subpena duces tecum and such courts shall have power to order and require compliance therewith. A record shall be made of such hearing and any interested party shall be entitled to a copy of such record to be furnished by the Board at its reasonable cost. After such hearing and adjudication by the Board, appeals shall lie as is provided by the Administrative Procedure Act, and the review by the court shall be upon the weight of the evidence. Upon the giving of notice of alleged violation of law or regulation as herein provided, either the Board or the association affected may, within thirty days after the service of said notice, apply to the United States district court for the district where the association is located for a declaratory judgment and an injunction or other relief with respect to such controversy, and said court shall have jurisdiction to adjudicate the same as in other cases and to enforce its orders. The Board may apply to the United States district court of the district where the association affected has its home office for the enforcement of any order of the Board and such court shall have power to enforce any such order which has become final. The Board shall be subject to suit by any Federal savings and loan association with respect to any matter under this section or regulations made thereunder, or any other law or regulation, in the United States district court for the district where the home office of such association is located, and may be served by serving a copy of process on any of its agents and mailing a copy of such process by registered mail, to the Federal Home Loan Bank Board, Washington, District of Columbia.' 12 U.S.C.A. 1464(d)(1)
 
 
 [10]
 It is of some significance that the directors who resigned are not here complaining of being deprived of their offices or any rights. Under the statute and the regulations the association and/or the directors could have refused to comply with the alleged demands or invoked the formal administrative and judicial machinery to determine whether the Board's representatives were acting improperly