Leroy **FRAZIER** et al., Plaintiffs,

v.

Edwin W. **CALLICUTT** et al., Defendants.

**UNITED STATES of America,**
**Plaintiff,**

v.

Edwin W. **CALLICUTT** et al., Defendants.

Nos. WC 72–77–S, WC 73–28–S.

United States District Court,
N. D. Mississippi, W. D.

Sept. 18, 1974.

Sidney R. Bixler, Nathaniel Friends, James Kieckhefer, Civil Rights Div., U. S. Dept. of Justice, Washington, D. C., for plaintiff United States.

William A. Allain, Asst. Atty. Gen., Jackson, Miss., L. G. Fant, Jr., William C. Spencer, of Fant, Crutcher, Moore & Spencer, Holly Springs, Miss., for defendants.

James D. Minor, Holly Springs, Miss., for plaintiff Leroy Frazier, and others.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

After three evidentiary hearings before two different judges, these cases are now before this court for a decision on the merits. By way of introduction, a brief description of the prior proceedings is perhaps warranted.

Frazier v. Callicutt, WC 73–77–S commenced on October 11, 1972 with the filing of complaint by Leroy Frazier and seven other named plaintiffs against Edwin W. Callicutt, the circuit clerk and registrar of Marshall County, Mississippi, and five named members of the board of election commissioners of Marshall County (board hereinafter), this complaint was filed as a class action charging violation by the defendants of, *inter alia,* the Fourteenth Amendment and 42 U.S.C. § 1971(a)(2)(A). Plaintiffs in *Frazier* at the time of filing complaint simultaneously moved the court for a temporary restraining order and preliminary and permanent injunctions in order that some relief might be obtained, if justified, prior to the November 7, 1972 presidential election. A hearing on the propriety of such injunctive relief was held before this court in Clarksdale, Mississippi, on October 18, 1972. The injunctive relief sought was denied by the court after that hearing, primarily because the proof offered therein failed to meet the standard extant in this circuit, as announced in Exhibitors Poster Exchange, Inc. v. National Screen Service Corp., 441 F.2d 560 (5th Cir. 1971), which limits the granting of a mandatory preliminary injunction to those "rare instances in which the facts and law are clearly in favor of the moving party." Id. at 561, citing Miami Beach Federal Savings & Loan Ass'n v. Callander, 256 F.2d 410, 415 (5th Cir. 1958).

United States v. Callicutt, WC 73–28–S, was commenced by filing of complaint on April 6, 1973. This action was originally assigned to the Chief Judge of this district, The Honorable William C. Keady. There the Department of Justice, proceeding under 42 U.S.C. § 1971 (c), brought suit charging the defendants in the Frazier case with violation of the Fourteenth and Fifteenth Amendments and 42 U.S.C. § 1971(a). The government also moved the court for a temporary restraining order and preliminary injunction in order to attempt to obtain relief prior to the next election in the affected jurisdiction, May 8, 1973. Judge Keady conducted an evidentiary hearing on this motion on April 23, 1973, at the conclusion of which injunctive relief was denied due to the government's failure to demonstrate an emergency of sufficient magnitude to justify extraordinary relief such

as a preliminary injunction.[1] At the time of the April 23, 1973 hearing, Judge Keady also ordered that the case then before his court, United States v. Callicutt, WC 73–28–S, be consolidated with the *Frazier* case, said consolidated actions to be heard concurrently by this court.

A trial on the merits in these two consolidated actions was held in the United States Courthouse in Oxford, Mississippi, on May 30, 1974. After having fully considered the evidence there introduced, the court makes findings of fact and conclusions of law as indicated below in accordance with Rule 52(a), F.R.Civ.P.

## FINDINGS OF FACT

Under Mississippi law, it is the duty of the registrar to process voter registration applications. An applicant is entitled to register if he or she "has completed the application form as prescribed by law." Section 23–5–33(a), Miss.Code Ann. (1972). Apparently, the determination as to whether the form has been completed "as prescribed by law" is left to the judgment of the registrar, as he is directed to endorse upon such proper applications the words "APPROVED FOR REGISTRATION". *Id.*

In the event the "applicant has not complied with the constitution and laws of [Mississippi] to entitle him to regis-

ter to vote", the registrar is directed to endorse on the application the words "NOT APPROVED FOR REGISTRATION", as well as his reasons for failing to give his approval. Section 23–5–33 (b), Miss.Code Ann. (1972).

Should an applicant for voter registration take issue with the registrar's non-approval of his application, appeal may be had to the county board of election commissioners (board) by filing a written application for appeal with the registrar. Section 23–5–55, Miss.Code Ann. (1972). The state legislature vested in the board the authority to hear and determine appeals from the decisions of the registrar. Section 23–5–59, Miss.Code Ann. (1972). In carrying out this function, the board is to hear all appeals *de novo* and may receive oral and documentary evidence, as well as subpoena witnesses. Section 23–5–63, Miss.Code Ann. (1972). The decision of the board as to questions of fact is final, but questions of law may be appealed through the state court system. *Id.*

At the trial, both the government and the individual plaintiffs limited their complaint to the actions of Edwin W. Callicutt who, acting in his official capacity as registrar of elections for Marshall County, Mississippi, according to the allegations of plaintiffs has violated the Fifteenth Amendment[2] and 42 U.S.C. § 1971(a)(2)(A).[3] Specifically,

---

1. The proof showed that at the date of the hearing only three applications for registration were pending before the board of election commissioners. A meeting of the board approximately one month previous had disposed of all referrals from the registrar pending at that date. The three applications pending board review at the date of the court hearing were those of applicants residing within Marshall County, but outside the city of Holly Springs in which the municipal election of May 8, 1973 was to be held. These applications were therefore not material to the government's case since the justification offered for a preliminary injunction was the inability of affected voter applicants to participate in the May 8 municipal election.

2. "Section 1. The right of citizens of the United States to vote shall not be denied or

abridged by the United States or by any State on account of race, color, or previous condition of servitude.

Section 2. The Congress shall have power to enforce this article by appropriate legislation".

3. "No person acting under color of law shall—(A) in determining whether any individual is qualified under State law or laws to vote in any election, apply any standard, practice, or procedure different from the standards, practices, or procedures applied under such law or laws to other individuals within the same county, parish, or similar political subdivision who have been found by State officials to be qualified to vote. . ."

plaintiffs complain that the registrar has applied one set of standards in approving or disapproving applications for registration to applicants who are students at Rust College or Mississippi Industrial College, both located in Holly Springs, the county seat of Marshall County, and another set of standards in approving or disapproving applications of all other applicants for registration as voters in Marshall County. All save one of the students in attendance at Rust College are black; Mississippi Industrial College has an all-black enrollment.

At the inception of the voter registration process in Mississippi, the applicant is furnished with an application, the contents of which are specifically prescribed by statute. Section 23–5–303, Miss.Code Ann. (Supp.1973). This "Application for Registration" consists of eight questions concerning the prospective voter's vital statistics and personal history. Item seven on the application contains nine subparts, apparently designed to elicit information as to the applicant's contacts with possible domiciles other than the one which he or she claims for purposes of voting. The subquestions include, among others, such subjects as the address shown on the applicant's driver's license, if any; the number of the applicant's telephone and its location, if any; the name and location of the church to which the applicant belongs, if any; the address listed by the applicant on his or her most recent income tax return; and the location of the greater amount of the applicant's personal possessions.

According to Mississippi law, after the applicant completes the application form, it is to be reviewed by the registrar or his assistants and, in the language of the statute, "[i]n the event that three or more of the answers to item 7 on the application form set forth in section 23–5–303 indicate a location other than that claimed by the applicant for registration, the registrar shall deny registration pending automatic review by the county election commissioners.

. . ." Section 23–5–305, Miss.Code Ann. (Supp.1973). It is in his alleged application of and non-compliance with this statute that the plaintiffs contend Mr. Callicutt has run afoul of the Fifteenth Amendment and 42 U.S.C. § 1971 (a)(2)(A).

During the period of June 30, 1972 to January 20, 1973, the registrar's office disapproved and referred to the board the application of every black person who listed upon the application his or her address as Rust or Mississippi Industrial Colleges and whose previous address was in any county other than Marshall. This amounted to referral by the registrar of sixty of the sixty-one black student applicants during the relevant time period. Of the sixty applicants referred to the board, forty-seven were ultimately rejected for voter registration. Of these sixty prospective voters whose applications for registration were disapproved and referred to the board by the registrar, at least twenty-nine answered less than three of the nine questions contained in item seven of the application form in a manner which indicated an actual residency in a county or state other than that claimed on the voter application (an "incorrect" response).

Referrals of these applications containing less than three "incorrect" responses does not violate the plain language of the Mississippi statute concerning automatic referral of applications containing three or more incorrect responses since the statute fails to proscribe the use of additional reasonable criteria by the registrar upon which to base his decision to disapprove a voter application. Section 23–5–305, Miss. Code Ann. (Supp.1973). However, the quantitative results of the registrar's decision as to approval or disapproval of the applications of Rust of Mississippi Industrial students (necessarily all black) stands in marked contrast to the results of the registrar's decisions as to non-student voter applicants.

During the same June to January period during which the registrar dis-

approved and referred the application of every Rust or Mississippi Industrial student which listed a previous address other than Marshall County, the registrar approved for registration without referral seventy-three non-student applicants who answered three or more questions in item seven of the application form in a manner indicating a residence other than Marshall County. Of these seventy-three applicants whose registrations were approved without referral by the registrar, a total of sixty-four were white.

In addition to being a clear violation of the Mississippi statute which directs the registrar to disapprove and refer applications containing three or more "incorrect" responses to item seven, the action of the registrar in approving the applications of this group of predominately white non-students establishes the use by the registrar of an obviously different standard from that which he employed in disposing of student applications. It appears to the court that student applicants were summarily referred by the registrar to the board for determination while the applications of non-students were evaluated on a subjective basis, without regard to the requirements of Mississippi law concerning mandatory referral in certain instances. Thus, in making his determination as to whether to refer an application to the board, the registrar applied a "strict" standard to student applicants (referring all student applications which listed a previous address not in Marshall County) and a "liberal" standard to non-student applicants (approving without referral 98.7% of all white applicants and substantially all black non-student applicants).

## APPLICABILITY OF 42 U.S.C. § 1971

Although it is clear to the court that the registrar applied different standards to student voter applicants than to non-student voter applicants in determining whether applications should be accepted for registration or referred to the board of election commissioners, there remains the question of whether the disparate treatment accorded applicants by the registrar is of the type which is proscribed by 42 U.S.C. § 1971(a)(2)(A). A plain reading of the statute discloses no limitations which would preclude its application to cases of non-racial discrimination as well as racial; however, at least one district court judge in this circuit has found that, because of its legislative history and prior judicial construction, this portion of the Civil Rights Act of 1964 proscribes the use of different standards in voting registration procedures only when racial considerations dictate the standard to be employed. Ballas v. Symm, 351 F.Supp. 876, 888–889 (S.D.Tex.1972), aff'd 494 F.2d 1167 (5th Cir. 1974).

The factual situation in *Ballas* was at once substantially similar yet significantly different from that in the case *sub judice*. There a county voter registrar in Texas had, on his own initiative, formulated a questionnaire with inquiries similar to those contained in item seven of the Mississippi voter application form which he required applicants who were not personally known to him to complete concurrently with their application for registration. Applicants known by the registrar to reside within the county were not burdened with the additional requirements of completing this questionnaire. The plaintiff in the *Ballas* case, a student at a substantially all-black college located within the county, attacked the registrar's procedure of imposing this additional burden as a violation of the Fourteenth Amendment and 42 U.S.C. § 1971(a)(2)(A).

The Circuit Court of Appeals affirmed the holding of the district court in rejecting the plaintiff's claim, but on significantly different grounds. Rather than finding Section 1971 inapplicable to instances of non-racial discrimination as had the district court, the circuit court reasoned that the registrar was in actuality applying but one standard to all applicants, that of bona fide residency within the state and county. Ballas v. Symm, 494 F.2d 1167 (5th Cir. 1974).

If the registrar did not personally know the applicant to be a resident of the county and could not ascertain that the applicant owned any real property within the county, then the applicant was requested to complete the questionnaire to facilitate the registrar's determination of the applicant's true residency. The court found that the fact that some applicants are required to shoulder this additional burden in order to establish their residency was not a violation of 42 U.S.C. § 1971(a)(2)(A) since the information elicited by the questionnaire was necessary in order that the registrar might make an informed and reasonable determination as to an applicant's bona fide residency.

The facts in the *Ballas* case must be carefully distinguished from those in the case at bar. In *Ballas*, the additional burden of completion of a questionnaire was imposed upon some prospective voters by the registrar, but this disparate treatment was justified as it was imposed in an impartial manner only upon those applicants for whom there existed no alternative channel for securing information as to residency. In the case *sub judice*, the burden of completing the questionnaire was imposed upon all applicants, but the registrar imposed an additional burden of prosecuting an appeal to the board of election commissioners on some applicants by summarily disapproving the applications of anyone claiming to reside on the campus of Rust or Mississippi Industrial College.[4] This arbitrary distinction alone would perhaps be sufficient to establish the existence of a different standard, but such a finding is conclusively buttressed by the failure of the registrar to refer the applications of members of the "favored" class, non-students, especially white non-students, in accordance with Mississippi law.

■■ For the above-stated reasons, the *Ballas* court's finding of no violation of Section 1971 does not dictate the result here; however, the tenor of the circuit court's opinion in *Ballas* persuades this court that, in a proper case, 42 U.S.C. § 1971(a)(2)(A) may be applied to prohibit discrimination on non-racial as well as racial grounds. This is such a proper case, if for no other reason than the fact that all discriminatees here have been shown to be members of a minority community, and precisely the minority community which the Fifteenth Amendment and the Civil Rights Act of 1964 were primarily designed to protect.

Accordingly, the court concludes that plaintiffs in the actions which have been consolidated for trial herein are entitled to injunctive relief against defendant Callicutt, as registrar of elections in Marshall County, Mississippi, his employees, deputies, subordinates, and successors in office and all persons acting in concert or participation with any of them, so as to restrain such parties, or any of them, from failing to apply uniform standards to all applicants for registration, including black students attending institutions of higher learning in Marshall County, Mississippi, and from failing to register every student applicant who was denied registration because of the application of a stricter or more stringent standard than that applied to other applicants.

The court will enter the appropriate order.

4. In response to requests for admissions, defendants admitted that during the relevant time period the registrar referred to the board the application of every black person who listed Mississippi Industrial College or Rust College as a present address and whose previous address was other than Marshall County.