**Richard J. SARGENT et al., Plaintiffs,**

**v.**

**GENESCO, INC., et al., Defendants.**

**Civ. No. 71–197.**

United States District Court,
M. D. Florida,
Tampa Division.

June 1, 1972.

See also D.C.Fla., 337 F.Supp. 1244.

---

R. Alan Stotsenburg, New York City, Hardy, Peal, Rawlings & Werner, New York City, H. Gordon Brown, Clearwater, Fla., Pettigrew & Bailey, Miami, Fla., for plaintiffs.

Fox, Burton, George & Loeffler, P.A., Clearwater, Fla., for Clayton B. Burton.

Charles F. Clark of Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for Goodbody & Co., Walston & Co., Inc., Ladd Dinkins & Co., First Alabama Securities, Inc., Kohlmeyer & Co., McCarley & Co., Inc., Powell, Kistler & Co., and Roberts, Scott & Co., Inc.

Donovan, Leisure, Newton & Irvine, New York City, for Genesco, Inc., Genesco Financial Corp., Ernest B. Holt and Richard E. Horch.

Shackleford, Farrior, Stallings & Evans, P.A., Tampa, Fla., for Frank Garcia.

Leonard W. Cooperman, St. Petersburg, Fla., for Leeds Shoes, Inc.

Yado, Keel & Nelson, Tampa, Fla., for Julian Lemus and Jack Chapman.

Albritton, Sessums & Grandoff, Tampa, Fla., for A. G. Edwards & Son, Inc.

Pope, Burton & Crumbley, P.A., Tampa, Fla., for Earl G. Brown and William M. Burton.

William T. Keene, Tampa, Fla., for C. Edward Brittain.

Albert I. Gordon, Tampa, Fla., for Stuart S. Golding and Roy Cotarelo.

Trenam, Simmons, Kemker, Scharf & Barkin, Tampa, Fla., for Wm. H. Martin.

Gibbons, Tucker, McEwen, Smith, Cofer & Taub, Tampa, Fla., for Richard Lieb.

Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Fla., for Genesco, Inc., Genesco Financial Corp., Ernest B. Holt and Richard E. Horch.

Harrison, Greene, Mann, Davenport, Rowe & Stanton, St. Petersburg, Fla., and William Gruman, Tampa, Fla., for Ralph A. Buchman, Individually.

## MEMORANDUM OPINION AND ORDER

KRENTZMAN, District Judge.

This came before the Court upon consideration of all pending motions. Plaintiffs filed the original complaint in this action in May, 1970, in the Southern District of New York, and filed an amended complaint on July 2, 1970. Plaintiffs sought to proceed on behalf of a class and sued derivatively, charging violations of the federal securities laws by officers and directors of Leeds Shoes, Inc., and by certain others alleged to be controlling persons of Leeds Shoes, Inc. Plaintiffs also charged violations of Florida securities laws and Florida common law.

On August 17, 1970, certain of the defendants moved to have the action transferred to the Middle District of Florida.[1] The United States District Judge to whom the case was assigned in the Southern District of New York granted the transfer motion on January 18, 1971. Plaintiffs sought a writ of mandamus in the United States Court of Appeals for

---

1. There is now some dispute as to whether the transfer was sought and ultimately granted pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). This issue is discussed below.

the Second Circuit, but that Court denied relief. The case was formally transferred to this Court in April, 1971.

After transfer, local counsel for certain of the defendants entered notices of appearance. Most defendants, and plaintiffs either had not retained local counsel, or said counsel had not appeared of record. On September 17, 1971, the Court noticed the case for status of case conference in order to determine the posture of the case, to determine whether or not the parties on behalf of whom no local appearance had been entered either had or would soon retain local counsel, and to devise an orderly procedure for further progress in the case. The hearing was scheduled for October 18, 1971. The Court's conclusion that the parties had either forgotten or neglected the case after the transfer turned out to be wishful. Perhaps the apparently disinterested plaintiffs were suddenly spurred into action by the Court's notice of hearing.

On October 12, 1971, plaintiffs filed the first in a series of "emergency" motions. This was a motion for injunctive relief. Basically, plaintiffs sought a temporary restraining order and a preliminary injunction of an affirmative nature requiring Leeds Shoes, Inc. to schedule and hold an annual meeting. The Court heard the motion as an application for temporary restraining order on the same day it was filed. It being apparent that an annual meeting was being scheduled, the Court denied the application at hearing.[2]

The status of case conference was conducted as scheduled on October 18, and the Court directed plaintiffs to file an amended complaint. Plaintiffs filed their amended complaint on November 16, approximately five days after the time specified in the Court's order of October 19, 1971. The Court denied motions to dismiss based upon the untimely filing of the second amended complaint.[3]

On November 17, 1971, plaintiffs again brought an "emergency" matter before the Court. This time plaintiffs sought a temporary restraining order blocking the holding of the annual meeting plaintiffs had previously sought to require. The Court denied the motion.[4] On November 18, plaintiffs filed an "application for immediate reconsideration of plaintiffs' motion for temporary restraining order and in the alternative application for immediate grant of a preliminary injunction." This motion was also denied.[5]

On December 2, 1971, and January 6, 1972, the Court heard plaintiffs' evidence in connection with their application for preliminary injunction. At the January 6 hearing, the Court set out a schedule for filing of briefs.[6] The parties, including plaintiffs, wished to have the hearing transcribed before briefs were filed, so the period for filing of briefs was of necessity somewhat lengthy.

Plaintiffs filed their brief in support of preliminary injunction on March 3, 1972. On March 6, plaintiffs filed a motion for temporary restraining order. On March 7, plaintiffs filed a "motion for preliminary injunction instead of temporary restraining order." At the time these "emergency" motions were filed, the undersigned was presiding over a criminal trial of three weeks duration in Fort Myers, Florida. Due to the unavailability of the Judge to whom the case was assigned, plaintiffs undertook to have their motions heard by the Chief Judge of the Middle District of Florida. Chief Judge William A. McRae, Jr., resident in Jacksonville, Florida, concluded that the asserted emergency did not exist, and declined to rule

---

2. This ruling was later reflected in a written order filed on October 14, 1971.

3. Order of December 6, 1971.

4. Order of November 17, 1971.

5. Order of November 18, 1971.

6. Order of January 7, 1971.

upon the motions.[7] Plaintiffs then sought entry of an injunction pending appeal by a single judge of the Fifth Circuit Court of Appeals pursuant to the "All-Writs Statute".[8] United States Circuit Judge Bryan Simpson concluded that sufficient time was available to allow plaintiffs to take an expedited appeal to an emergency panel of the Fifth Circuit Court of Appeals, and denied relief.[9]

Plaintiffs then pursued an appeal seeking an injunction pending further appellate review. An injunction pending appeal was denied by a panel of the Fifth Circuit Court of Appeals on March 17, 1972.[10]

One defendant, Frank Garcia, has filed an answer to the complaint in which he generally denies the allegations thereof. All other defendants responded to the complaint by motions directed at the viability of the pleading. On March 30, 1972, the Court heard arguments of counsel on motions to dismiss. The motions directed at the complaint, and plaintiffs' prayer for preliminary injunctive relief are currently pending before the Court.

## I.

## THE PRELIMINARY INJUNCTION

Plaintiffs concluded their evidential presentation relative to the application for preliminary injunctive relief on January 6, 1972. All defendants argued that plaintiffs' evidence was insufficient to support the relief sought. In order to determine this issue the Court directed the parties to submit memoranda of law following the preparation of a transcript of the hearing. Said memoranda have now been filed and the Court has heard arguments of counsel.

The injunctive relief sought by plaintiffs is set out in Count III of their second amended complaint and in the motion for additional injunctive relief filed on December 2, 1971. Basically plaintiffs seek a mandatory injunction requiring the management of Leeds Shoes, Inc. to call and hold a new annual shareholders meeting, to prepare a proxy statement disclosing all material facts about the affairs of Leeds Shoes, Inc., and to file with the Securities Exchange Commission an amended Form 10–K in compliance with the Securities Exchange Act. Plaintiffs further wish to restrain the management of Leeds Shoes, Inc. from carrying on any negotiations on behalf of Leeds Shoes, Inc. with respect to a possible merger or similar transaction with any other business entity until after a new election.

At hearing plaintiffs attempted to prove that defendants had in the past engaged in conduct in violation of the securities laws, that such conduct has been continuing in nature, and that the only avenue available to prevent further violations, which in view of the past conduct are inevitable, is entry of a preliminary injunction. At the outset, it is evident that the Court is not without the authority to grant the injunctive relief sought by plaintiffs provided the evidentiary showing is sufficient.[11]

In order to sustain the propriety of preliminary injunctive relief, there must be some showing of irreparable harm which plaintiffs will suffer absent such relief.[12] In exercising its discretion, the Court must balance the relative convenience of the parties and the possible injuries to them which may result from granting or withholding injunctive

7. Order of Chief Judge William A. McRae, Jr. filed March 9, 1972.

8. 28 U.S.C. § 1651.

9. Order of Circuit Judge Bryan Simpson, filed March 9, 1972.

10. Sargent v. Genesco, 458 F.2d 9 (5 Cir., opinion dated March 17, 1972).

11. Mills v. Electric Auto-Lite Company, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed. 2d 423 (1964); Studebaker Corp. v. Gittlin, 360 F.2d 692 (2 Cir. 1966).

12. Miami Beach Federal Savings & Loan Association v. Callander, 256 F.2d 410, 415 (5 Cir. 1958).

relief.[13] One further factor is the likelihood of which party will ultimately prevail at trial.[14] The Court will apply each of these factors in considering the evidence presented by plaintiffs.

■ Plaintiffs allege, and have attempted to prove the existence of nine separate securities law violations. Plaintiffs maintain that these violations are continuing in nature, and that taken together they show a course of conduct on the part of the defendants to commit a fraud upon stockholders. For plaintiffs to prevail on this motion the Court would have to conclude that securities violations have occurred in the past and are likely to continue into the future. However, the Court should, consonant with the purposes of preliminary injunctive relief avoid making findings which would in effect dispose of the merits of the case.[15] This is especially so where, as here, defendants have not answered the complaint,[16] and the extensive discovery, which would undoubtedly be required in a case of this nature has barely commenced.

Of the nine alleged securities violations, only those occurring during the term of defendant Frank Garcia, as president of Leeds Shoes, Inc., have been established with any definitiveness by plaintiffs. These violations occurred during 1967, the most turbulent year in what has been at least since that time an unhappy corporate existence for Leeds. These violations are supported by the testimony of defendant Garcia, who was called by plaintiffs as an adverse witness,[17] by the testimony of Mr. Paul Anderson, a certified public accountant,[18] by the minute books of Leeds Shoes, Inc.,[19] and by judicial notice of the criminal action initiated against defendants Garcia, Endsley and McCormick in this Court, which action was ultimately concluded upon the guilty plea of Garcia.[20]

From this evidence it is established that the Leeds' financial report for fiscal 1967, contained many false statements. The cash item was overstated by approximately $100,000.00,[21] the inventory was incorrectly stated,[22] net earnings were incorrectly stated,[23] retained earnings were incorrectly stated,[24] earnings per share of common stock were incorrectly stated,[25] and the entire finan-

13. 3 Barron & Holtzoff, Federal Practice and Procedure 490, 491.

14. *Id.* at 493.

15. Miami Beach Federal Savings & Loan Association v. Callender, *supra*.

16. Only the defendant Garcia has filed an answer to the complaint. All other defendants responded by motions directed at the sufficiency of the complaint.

17. Defendant Garcia's testimony is set out in the transcript of the hearing on plaintiffs' application for preliminary injunction (hereinafter cited "Tr.") pp. 286–298, 372–476.

18. Tr. pp. 207–286, 334–369, especially pp. 335–340. Witness Anderson has fifteen years experience as a certified public accountant, and is the partner in charge of the Tampa office of the accounting firm of Price-Waterhouse. Anderson's firm was retained as Leeds' independent public accountants in December, 1967, and assisted the Securities Exchange Commission in developing certain information with regard to the financial statements of Leeds during 1967. Tr. p. 209.

19. The minute books of Leeds have been admitted into evidence over objection. The relevant portions are set out in plaintiffs' designation filed March 3, 1972.

20. Case No. 69–77 Cr.T., filed in the Middle District of Florida, Tampa Division. Defendant Garcia pled guilty to Count I of the indictment, and was sentenced on March 17, 1971, by the Hon. Joseph P. Lieb, now deceased. Two other defendants in the case, Walter S. Endsley, and Robert A. McCormick, both of whom are also defendants in this case pled guilty to Count II of the same indictment, and were sentenced by Judge Lieb on November 13, 1970.

21. Tr. p. 392.

22. Tr. pp. 405–406.

23. Tr. pp. 408–409.

24. Tr. p. 410.

25. Tr. pp. 410–411.

cial condition of Leeds was incorrectly stated.[26] These misstatements were made knowingly and willfully.[27] To add zest to the fraudulent paperwork, records of Leeds Shoes, Inc., were burned, buried and otherwise destroyed.[28]

It is impossible to conclude that Leeds' past has been unencumbered by substantial violations of Federal securities laws. These 1967 violations do not, however lead inescapably to the conclusion that Leeds Shoes, Inc. should now be prospectively enjoined so as to require new proxy statements and the holding of a new shareholders meeting for the year 1971. There is no evidence in the record of this case that any director of Leeds knew of Garcia's conduct until after the fact. Only three of the current Leeds directors were directors during the events of 1967. Defendant Jack Chapman, who followed Garcia as president of Leeds,[29] testified that he and the other directors of Leeds at the time Mr. Garcia's conduct came to light were "very much shocked at the turn of events."[30] The testimony of defendant Julian Lemus, who was in 1967, and still is a director of Leeds is consistent with that of defendant Chapman. Defendant Ernest B. Holt, Jr., the only other director in 1967, who still serves in that capacity was not called as a witness. All of the other current directors of Leeds have come on the scene since 1967. Obviously the new directors cannot be tarred with the brush of Garcia, who has not participated in the management of Leeds since December, 1967. There is a complete lack of any evidence which would even tie the directors present in 1967 to Garcia's illegal activities. The other securities violations alleged by plaintiffs to have been committed, and which plaintiffs argue have been amply demonstrated by their evidential presentation, have simply not been adequately proven. Plaintiffs' presentation is inadequate to demonstrate that the alleged violations were in fact violations, and they have wholly failed to demonstrate any scheme to commit a fraud upon stockholders. This is not to say that plaintiffs cannot ultimately prevail on the merits in this action, provided that this action is one which will ultimately require disposition on its merits. However, without at least some evidence to support the conclusion that Leeds, and its officers and directors have been engaging in a series of securities violations, there is no way to infer that the violations will continue and must be enjoined.

Even if plaintiffs had presented sufficient facts to demonstrate a probability of a series of securities violations by defendants, and could satisfy the Court that there is a probability, or at least some likelihood that plaintiffs can ultimately prevail against present management of Leeds, an unlikely prospect in view of the Court's disposition of the motions to dismiss, *infra*, that would not end the matter. Plaintiffs have failed not only to show that they will suffer irreparable harm[31] unless a preliminary injunction issues, but have failed to show that plaintiffs will in any way be injured absent such relief. Plaintiffs suggest that if a proposed merger with another corporate entity takes place, then the individual liability of the corporate directors of Leeds will be defeated,

26. Tr. pp. 419–421.

27. Count I of the Indictment in Case No. 69–77 Cr.T., to which defendant Garcia pled guilty.

28. Count II of the Indictment in Case No. 69–77 Cr.T., to which defendants Endsley and McCormick pled guilty.

29. Tr. p. 36.

30. Tr. p. 39.

31. The parties disagree as to the extent of necessity of a showing of irreparable harm. Plaintiff asserts that a showing of irreparable injury is not applicable in federal securities cases, citing Studebaker Corp. v. Gittlin, *supra*.
In that case the Second Circuit did not hold as plaintiffs suggest, but rather defined irreparable harm as "harm which cannot be repaired." *Id*. 360 F.2d at 698. Defendants opt for a standard far more strict, citing *Callander, supra.*

and plaintiffs will be left without any remedy. This assertion is not established by any evidence of record in this case or by any judicial decisions cited by plaintiffs or found by the Court. In support of their position that they will suffer harm absent the requested relief, plaintiffs cite many cases in which Courts have determined the existence of irreparable harm or a balancing of equities in a plaintiff's favor, however nothing in the record of this case substantiates a finding that these plaintiffs will suffer harm.

This matter is before the Court only on the sufficiency of plaintiffs' evidence to establish the necessity of entry of a preliminary injunction. The Court is without benefit of any evidential presentation by defendants as to what harm they may suffer should a preliminary injunction issue. When as here, plaintiffs have proven no harm which will flow to them absent the relief, a balancing of equities becomes unnecessary gesture. If defendants are enjoined as requested need to be prepared and mailed to stockby plaintiffs a new proxy statement will holders, and a new stockholders meeting will need to be called. Whatever cost would result to defendants in this effort would cause more harm to defendants than has been shown to fall upon plaintiffs absent a preliminary injunction. Furthermore, defendants would be inhibited to some extent in the conduct of the business of Leeds Shoes, Inc. However small this inconvenience to defendants, it is more harm than has been shown to fall upon plaintiffs absent entry of a preliminary injunction.

Plaintiffs argue that their burden in this case must be lessened due to the fact that all of the evidence is in the hands of defendants, and due to the fact that the witnesses called by defendants were adverse. Whatever plaintiffs' difficulties are in this respect, they cannot operate to relieve a movant of the burden which is his of establishing at least a prima facie showing of need for the granting of requested relief.[32] In order to conclude that plaintiffs' proof is sufficient to justify the requested relief in this case, the Court must either have to place the burden upon defendants to establish that injunctive relief is improprietous absent even a prima facie showing by plaintiffs, or conclude that the witnesses called by plaintiffs perjured themselves, and that the record therefore demonstrates facts by implication, innuendo and speculation which are otherwise entirely missing.

Plaintiffs have failed to demonstrate that they will suffer irreparable harm absent entry of a preliminary injunction, or that any harm whatever will flow to them absent entry of a preliminary injunction. Plaintiffs have also failed to demonstrate any degree of probability that they will ultimately prevail in this cause. The Court concludes that plaintiffs' evidential presentation is inadequate to support the requested relief. The application for entry of a preliminary injunction will be denied.

## II.

### THE MOTIONS TO DISMISS

All defendants, save defendant Frank Garcia, have moved to dismiss plaintiffs' second amended complaint. Generally the motions of each defendant are based upon the same grounds, directed to separate counts of the amended complaint and will be considered as they relate to each count. Plaintiffs' second amended complaint is fifty-eight pages long. The first portion of the complaint is devoted to general allegations which relate to each of the four counts of the complaint. It is alleged in paragraphs one through four that jurisdiction and venue are based upon Section 27 of the Securities Exchange Act of 1934,[33] Section 22 of the Securities Act of 1933,[34] and principles of pendent jurisdiction.

In paragraphs five through nine, the position alleged by plaintiffs to be held

32. Congress of Racial Equality v. Douglas, 318 F.2d 95 (5 Cir. 1963).

33. 15 U.S.C. § 78aa.

34. 15 U.S.C. § 77v.

by each of the named plaintiffs and by each of the defendants is set out. Paragraphs ten through sixteen relate to plaintiffs' allegations as to the class action aspects of this cause. Plaintiffs allege among other things that they must be allowed to proceed as a class because otherwise their attorneys, who are proceeding on a contingent fee basis will not continue their representation. In paragraphs eighteen through twenty-one plaintiffs allege that Genesco, Inc., and Genesco Financial Corporation are controlling persons of Leeds Shoes, Inc.

### A. *Count I of the Second Amended Complaint*

In Count I of their second amended complaint, plaintiffs have sought to state individual and representative cliams resulting from violations of anti-fraud provisions of Section 10(b) of the Securities Exchange Act of 1934,[35] and of Rule 10b–5 of the Securities Exchange Commission.[36] Plaintiffs allege that the officers and directors of Leeds Shoes, Inc. published untrue statements of material facts about Leeds, and omitted to state material facts necessary in order to prevent the statements made, in the light of the circumstances under which they were made, from being misleading. These misstatements are alleged to have been made knowingly and willfully during the years 1966 and 1967. It is alleged that plaintiffs purchased shares in Leeds at a value inflated by the false statements and omissions, and that the purchases were made in reliance upon the false statements and omissions. It is alleged that the plaintiffs, who subsequently sold their stock, did so at a loss, and that those plaintiffs who have retained their stock, are holding their shares at a substantially reduced market value. Plaintiffs seek $20,000,000.00 damages from all defendants plus costs, attorneys' fees, and accountants' fees.

At hearing on defendants' motions to dismiss plaintiffs conceded that they would be entitled to no relief under Count I as against certain of the individual defendants who became officers or directors of Leeds at a time subsequent to the period alleged in Count I. Accordingly the Court dismissed Count I of the second amended complaint with prejudice as to defendants Richard E. Horch, William B. Curran, William H. Martin, Earl G. Brown, William M. Burton, the Wachovia Bank and Trust Company as Executor of the Estate of C. Edward Brittain, and Clayton B. Burton.[37]

Two of defendants' arguments in support of their respective motions to dismiss Count I merit discussion. The first of these is the argument that the claims therein are time barred by the statute of limitations. The second is the argument that there is no allegation that any of the plaintiffs were in privity with any of the defendants as to the purchase or sale of any stock, and that plaintiffs are therefore entitled to no relief presuming the truth of the other allegations.

### 1. *Statute of Limitations*

Defendants argue that the alleged federal cause of action covered in Count I accrued on December 12, 1967, the date that the Securities Exchange

---

35. 15 U.S.C. § 78j.

36. Rule 10b–5, entitled "Employment of Manipulative and Deceptive Devices," reads as follows:
 "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
 "(1) to employ any device, scheme, or artifice to defraud,

"(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
"(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

37. Order of April 5, 1972.

Commission suspended trading in the securities of Leeds Shoes, Inc., or prior thereto. This action commenced in May, 1970. Since Section 10(b) of the 1934 Act contains no applicable statute of limitations, it has been held that the statute of limitations of the State wherein the action is brought governs.[38] This holding is consistent with the general proposition that where a federal statute allows a private cause of action, but provides no limitation, then the state statute of limitations which most closely approximates the federal cause of action applies.[39]

The next relevant inquiry is which specific statute applies. There is a dispute as to whether the New York statute, or the Florida statute controls. The New York statute which applies to actions brought under § 10(b) is six years.[40] The Florida statute is either three years[41] or two years.[42] In the *Azalea Meats* case, *supra*, the Fifth Circuit Court of Appeals held that the applicable limitation in an action brought in Florida pursuant to § 10(b) is that specified in Florida Statute § 95.11(5) F.S.A. Defendants argue that the Fifth Circuit did not consider whether or not § 517.21 might apply. In the case of Fowler v. Matheny, 184 So.2d 676 (4 D.C.A.Fla.1966), the Florida court held that the applicable limitation under the so-called "Blue Sky Statute"[43] was that set out in the statute, *i. e.* two years. The Florida Statute is a state equivalent to Section 10(b) of the Securities Exchange Act of 1934. The Court in *Fowler* went on to declare the two year limitation to be absolute, commencing at the time of the alleged violation without regard to when plaintiff became aware of the violations.

Defendants are correct that the Fifth Circuit did not expressly consider the possible applicability of the § 517.21 limitation. However, the Court expressed what amounts at least to strong dicta that any limitation less than that provided in connection with a common-law fraud action would be contrary to the intent of the 1934 Act.

"It is important, however, to note, though gratuitously, that conceptually the gravamen of an action brought under section 10(b) of the Securities Exchange Act of 1934 is fraud and that a state statute of limitations should not be permitted to narrow the filing time available under a broadly remedial federal act to a period less than the one available for commencing a similar common-law action. This we believe to be the import of the holding of the Supreme Court that: 'A fundamental purpose, common to those statutes, was to substitute a philosophy of full disclosure for the philosophy of *caveat emptor* and thus to achieve a high standard of business ethics in the securities industry.' S. E. C. v. Capital Gains Bureau, 375 U.S. 180, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963)."[44]

If the § 517.21 limitation were applied, defendants' position would be well founded, since the Florida courts have interpreted the limitation in an absolute manner, and it is evident that this action was not commenced within two years of the occurrences alleged in Count I. However, the quoted language from *Azalea Meats* compels a contrary result.

 Furthermore, this action was originally filed in federal court in New

38. Vanderboom v. Sexton, 422 F.2d 1233 (8 Cir. 1970); Azalea Meats, Inc. v. Muscat, 386 F.2d 5 (5 Cir. 1967); Fratt v. Robinson, 203 F.2d 627 (9 Cir. 1953).

39. United Automobile Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); 28 U.S.C. § 1652.

40. Klein v. Auchincloss, Parker & Redpath, 436 F.2d 339 (2 Cir. 1971).

41. Florida Statutes § 95.11(5), F.S.A.

42. Florida Statutes § 517.21(1), F.S.A.

43. *Id.*

44. Azalea Meats, Inc. v. Muscat, *supra*, 386 F.2d at p. 8. See also Vanderboom v. Sexton, *supra*, 422 F.2d at pp. 1236–1237.

York. The case was transferred, according to the defendants' New York motion and the Court's order, pursuant to 28 U.S.C. § 1404(a). When an action is transferred from a federal district court in one state to a federal district court in another state pursuant to § 1404(a), the applicable limitation is that of the state wherein the action was originally filed.[45] Defendants vigorously contend that the transfer in this case was made pursuant to 28 U.S.C. § 1406(a), rather than § 1404(a). If defendants are correct in this assertion, then the Florida limitation would apply. Dubin v. United States, 380 F.2d 813 (5 Cir. 1967). While the *Dubin* case can be construed to extend the definition of what is a § 1406(a) transfer *vis-a-vis* a § 1404(a) transfer, it cannot be read to hold that a transfer described by the transferring judge to be for the convenience of the parties as a transfer ordered in the interest of justice due to improper venue.

Defendants' argument that this case was transferred pursuant to § 1406(a) is not supported by the record in this case. If the transfer were so construed, the *Azalea Meats* case stands for the proposition that the applicable Florida limitation is three years. It is evident from the face of Count I of plaintiffs' second amended complaint that this action was filed within three years of the alleged securities violations. [It should be noted that motions to dismiss based upon untimely filing of an action are not generally favored, since a limitation defense is not among those enumerated in Rule 12(b), Federal Rules of Civil Procedure.]

### 2. *Privity*

Private rights of action under Section 10(b) of the Securities Exchange Act of 1934, and under Rule 10b–5 of the Securities Exchange Commission have been recognized in the Fifth Circuit since 1959.[46] There are basically three elements requiring allegation and proof in such actions:

(1) Fraud or deceit through acts of commission or manipulation.

(2) A purchase or sale of securities in connection with such fraud or deceit.

(3) Resultant damages to the plaintiffs.[47]

The so-called "privity rule" as it applies to Section 10(b) actions was first articulated in Joseph v. Farnsworth Radio & Television Corp., 99 F.Supp. 701 (S.D.N.Y.1951), affirmed 198 F.2d 883 (2 Cir. 1952). The District Court stated the rule as follows:

"The issue is narrowed to merely this: May A, who purchased stock of the F Corporation on November 12th and B, who likewise purchased stock of the same corporation on December 13th, each on a national stock exchange and each at a price higher than he would have paid therefor had he known the true financial condition of F, recover from C, D and E, the directors and officers of the corporation, the difference between that paid and that which would have been paid had C, D and E disclosed, between the previous March 19th and October 30th when they were unloading their own stock in F, that F was in a straitened financial condition?

"Unless that liability may be spelled out of the statute and rule above quoted [Section 10(b) and Rule 10 (b)–5] I cannot conceive of a basis for its existence. And, with reluctance, I fail to find its basis even in the statute or rule quoted.

"As to the corporate defendant, there is no allegation of its involvement in either purchase or sale of stock and, this indispensable ingredient lacking, its motion to dismiss the

45. Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

46. Reed v. Riddle Airlines, 266 F.2d 314 (5 Cir. 1959).

47. Herpich v. Wallace, 430 F.2d 792 (5 Cir. 1970).

complaint as against it must be and is granted without leave to plead over.

" . . . A semblance of privity between the vendor and purchaser of the security in connection with which the improper act, practice or course of business was invoked seems to be a requisite and it is entirely lacking here." 99 F.Supp. 701, 706.

The District Court dismissed the complaint due to the failure of plaintiffs to plead that the alleged deceit was practiced by a defendant who either sold stock to plaintiffs or purchased stock from plaintiffs. The Second Circuit Court of Appeals affirmed in a brief *per curiam* opinion, Judge Frank dissenting.

In the years that followed the *Farnsworth* decision, the Second Circuit generally applied the privity doctrine, but gradually reduced its impact.[48] Ultimately privity was rejected by the Second Circuit in relation to injunction actions brought by the Securities and Exchange Commission. Securities and Exchange Commission v. Texas Gulf Sulphur Co., 401 F.2d 833 (2 Cir. 1968). Shortly thereafter privity was abandoned as a requirement in private Section 10(b) actions as well. Heit v. Weitzen, 402 F.2d 909 (2 Cir. 1968).

The Fifth Circuit Court of Appeals has discussed the holdings in *Texas Gulf Sulphur* and Heit v. Weitzen, but has not ruled as to whether or not there is privity requirement in a private action under Section 10(b) such as the instant case.[49]

The complaint herein does not allege from whom any of the plaintiffs purchased their stock in Leeds Shoes, Inc., or to whom the stock was sold by those plaintiffs who have not retained their stock. In Paragraph 29 of the complaint it is alleged that the defendant underwriters consented to the republishing of false information, thus furnishing the information to the investing public as well as to their customers. From this allegation it could perhaps be inferred that certain plaintiffs purchased their stock in Leeds from certain of the defendant underwriters, or at least that members of the class which plaintiffs purport to represent purchased their stock in Leeds from certain of the defendant underwriters.[50] Other than the vague inferences which can be drawn from Paragraph 29, allegations that the named plaintiffs or any member of their class bought or sold stock from any of the defendants are not included in plaintiffs' second amended complaint.

The policy considerations underlying the issue of whether or not the "purchase or sale of securities in connection with" element of a Section 10(b) action requires that a vendor and purchaser of securities be in privity one with the other before either can maintain a Section 10(b) action against the other are cogently set out in the majority and dissenting opinions in *Texas Gulf Sulphur* and Heit v. Weitzen. Further discussion of these policy justifications from this Court would serve no purpose.

The concept of private actions under Section 10(b) is not provided explicitly in the statute, but has been court fashioned consonant with the broad purposes of Federal securities regulation. Under the security practices of the nature alleged in Count I it is this Court's opinion that it is essential that there be an allegation and proof that plaintiffs either purchased or sold the stock from or to a party who committed the prohibited act.

---

48. *E. g.*, Mutual Shares Co. v. Genesco, Inc., 384 F.2d 540 (2 Cir. 1967) ; Cochran v. Channing Corp., 211 F.Supp. 239 (S.D.N.Y.1962).

49. The Fifth Circuit Court of Appeals has discussed the privity requirement as set out in *Farnsworth* and rejected in *Texas Gulf Sulphur* and *Heit*, but has not, in so far as this Court can glean expressed a preference for one view or the other. Herpich v. Wallace, *supra*, see especially note 12 at p. 805 of 430 F.2d.

50. The Court has not of course at this point in the litigation determined the viability of this action as a class action.

Applying this principle to Count I of the Second Amended Complaint, it is evident that privity is either not alleged, or is so vaguely alleged as to be missing from the complaint. Count I will therefore be dismissed. The dismissal will be without prejudice so as to allow plaintiffs an opportunity to amend their complaint in accordance with this opinion, or to amend their complaint alleging an alternative theory of purchase or sale such as discussed in Herpich v. Wallace, *supra*.

B. *Count II of the Second Amended Complaint*

In Count II of their second amended complaint plaintiffs have sought to state a claim for relief under the following alternative theories: (1) A direct action under Section 14(a) of the Securities Exchange Act of 1934;[51] (2) A direct action under Section 14(e) of the Securities Exchange Act of 1934;[52] (3) A direct action under Section 10(b) and Rule 10b–5; (4) A derivative action under Section 10(b) and Rule 10b–5.

It is immediately evident that the allegations of Count II cannot sustain a direct action under Section 10(b) and Rule 10b–5. An essential element of such a claim is the presence of a sale or purchase of securities by the plaintiffs in connection with the violation alleged. Cooper v. Garza, 431 F.2d 578 (5 Cir. 1970); Herpich v. Wallace, supra; Rekant v. Desser, 425 F.2d 872 (5 Cir. 1970); Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2 Cir. 1952). No sale or purchase by plaintiffs is alleged in connection with the violations alleged in Count II. In fact, the allegations of Count II demonstrate that there could have been no such sale or purchase by any of the plaintiffs. In Paragraph 5 of the second amended complaint the dates on which each plaintiff purchased stock in Leeds Shoes, Inc. is set out. Each of the purchases occurred before the events alleged in Count II as violations of the federal securities laws. In Paragraph 11 of the complaint plaintiffs allege the class they represent to be all persons who were beneficial owners of common stock of Leeds at the close of business on December 12, 1967. The events alleged as violations in Count II occurred subsequent to that date. As to the plaintiffs and members of the alleged class who sold their stock in Leeds subsequent to the events alleged in Count II, it is nowhere alleged that such sales were made in detrimental reliance upon any of the violations alleged in Count II.

Plaintiffs assert that the Supreme Court rejected the purchase or sale requirement by inference in Superintendent of Insurance of New York v. Bankers Life & Casualty Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). Plaintiffs assert that the Fifth Circuit Court of Appeals will no longer apply the purchase or sale rule in view of this decision. This Court has been unable to find such an inference in the *Superintendent of Insurance* Case. Indeed the very crux of the securities violations in that case was a purchase and sale of treasury bonds. The Supreme Court concluded that treasury bonds were securities within the meaning of Section 3(a)(10) of the 1934 Act.[53] It would doubtlessly prove surprising to the Supreme Court, which has expressed determination to construe Section 10(b) and the rules promulgated thereunder on a strict case-by-case basis,[54] to find that it eliminated one of the most fundamental elements of a 10(b) action in a case which did not require determination of the issue.

As to plaintiffs' contention that Count II presents a claim for derivative relief under Section 10(b), the claim rests on the contention that the corporation was involved in a purchase or sale of securities in connection with an allegedly fraudulent refinancing plan. It is note-

51. 15 U.S.C. § 78n(a).

52. 15 U.S.C. § 78n(e).

53. 15 U.S.C. § 78c(a)(10).

54. Securities and Exchange Commission v. National Securities, Inc., 393 U.S. 453, 465, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969).

worthy that plaintiffs are not seeking derivative relief under Count II. Plaintiffs' contention that they are entitled to direct relief even if their claim is construed as derivative is inadequately supported by the allegations.

 In an attempt to uphold the viability of Count II plaintiffs argue that a claim is stated under Sections 14(a) and 14(e) of the Securities Exchange Act of 1934. The securities violations alleged in Count II relate to a refinancing plan which was to be carried out by converting debentures into common stock. Plaintiffs allege that defendants solicited the common shareholder's support for this plan in a letter attached to the complaint as Exhibit A. This letter was clearly not a solicitation to the common shareholders to do anything. The shareholders were advised through the letter that assets were being sought, but they were neither encouraged nor allowed to take any action. The allegations of Count II are inadequate to support the conclusion that any solicitation was made to plaintiffs or the class they seek to represent. Brown v. Chicago, Rock Island & Pacific R. R., 328 F.2d 122 (7 Cir. 1964); Securities and Exchange Commission v. Okin, 132 F.2d 784 (2 Cir. 1943); Entel v. Allen, 270 F.Supp. 60 (S.D.N.Y.1967). The only solicitations alleged in Count II of plaintiffs' second amended complaint were made to debenture holders. Plaintiffs therefore have no standing to assert the claim alleged in Count II under Sections 14(a) or 14 (e).

Count II of the second amended complaint will be dismissed. The dismissal will be with prejudice as to plaintiffs' claim for direct recovery under Section 10(b). The dismissal will be without prejudice as to the other theories of recovery, allowing plaintiffs an opportunity to amend Count II in accordance with the foregoing.

### C. Count III of the Second Amended Complaint

Count III is basically an effort to recover injunctive relief based upon the substantive allegations of Counts I, II and IV. Several new alleged securities law violations are set out in the Count for the purpose of establishing a continuing sequence of securities violations on the part of the defendants.

The Court will deny plaintiffs' application for preliminary injunction as set out above. Count III is now viable only as it applies to plaintiffs' application for permanent injunctive relief. In view of the Court's rulings on Counts I and II, and the previous dismissal of Count IV, the Court concludes that Count III standing alone contains insufficient allegations to support plaintiffs' prayer for permanent injunctive relief. Count III will be dismissed without prejudice, in order to allow plaintiffs an opportunity to amend the Count in accordance with the foregoing.

### D. Count IV of the Second Amended Complaint

Count IV of plaintiffs' second amended complaint has previously been dismissed without prejudice as to all defendants due to plaintiffs' failure to deposit bond or security in accordance with previous orders of this Court.[55] Count IV has been dismissed with prejudice as to defendants Richard E. Horch, William B. Curran, William H. Martin, Earl G. Brown, William M. Burton, the Wachovia Bank and Trust Company as Executor of the Estate of C. Edward Brittain, and Clayton E. Burton, because it was evident that these defendants became officers or directors of Leeds at a time subsequent to the alleged violations contained in Count IV.[56]

 In Count IV plaintiffs seek to state a claim under the laws of the State

---

55. Order of April 5, 1972; Order of January 28, 1972, 337 F.Supp. 1244 (M.D. Fla.1972).

56. Order of April 5, 1972

of Florida. The Count is jurisdictionally based upon the Court's pendent jurisdiction. In view of the Court's rulings as to the other Counts of the second amended complaint, Count IV should now be dismissed without prejudice for the additional reason that no viable federal claims remain, and that there is no basis for acceptance of a claim for relief grounded upon pendent jurisdiction.

## III

### OTHER PENDING MOTIONS

Also pending before the Court are motions to withdraw as counsel of record for plaintiffs filed by Attorneys Richard A. Bokor, Esquire, and Larry Helm Spalding, Esquire. Other local counsel have appeared of record for plaintiffs, and the motions to withdraw will be GRANTED.

## IV

### STATUS OF CASE

Upon entry of this order, the status of this case will be as follows:

Count I of plaintiffs' second amended complaint will stand dismissed with prejudice as to those defendants listed in the Court's order of April 5, 1972. Count I will stand dismissed without prejudice as to all other defendants save defendant Garcia. Defendant Garcia filed an answer to plaintiffs' second amended complaint, and did not allege as defense therein the failure of the complaint to state a claim for relief as to him. Count I will remain viable only as to defendant Garcia pending amendment by plaintiffs.

Count II of plaintiffs' second amended complaint will stand dismissed with prejudice as to one theory of recovery advanced by plaintiffs, and without prejudice as to all other theories of recovery. Count II will remain viable only as to defendant Garcia pending amendment by plaintiffs.

Count III of plaintiffs' second amended complaint will stand dismissed without prejudice as to all defendants. Defendant Garcia was not among the defendants against whom injunctive relief was sought by plaintiffs in Count III.

Count IV of plaintiffs' second amended complaint will stand dismissed with prejudice as to those defendants listed in the Court's order of April 5, 1972. Count IV will stand dismissed without prejudice as to all defendants except defendant Garcia for the additional reason of failure of pendent jurisdiction.