**METROPOLITAN SECURITIES and Duncan C. Crawford, Plaintiffs,**

v.

**OCCIDENTAL PETROLEUM CORPORATION, MidCon Corp., and OPCO Acquisition Corp., Defendants.**

No. 88 Civ. 0179 (RWS).

United States District Court, S.D. New York.

Jan. 13, 1989.

---

Christopher Lovell, P.C., New York City (Christopher Lovell, of counsel), for plaintiffs.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City (Louis Nizer, Alan Mansfield, Loretta Gastwirth, Joel Mitnick, of counsel), for defendants.

## OPINION

SWEET, District Judge.

Defendants Occidental Petroleum Corporation ("Occidental"), OPCO Acquisition Corporation ("OPCO") and MidCon Corp. ("MidCon") have moved pursuant to Fed.R. Civ.P. Rule 12(b)(6) to dismiss the Amended Complaint (the "Complaint") of plaintiffs Metropolitan Securities ("Metropolitan") and Duncan C. Crawford ("Crawford") (together "Metropolitan") for failure to state a claim on which relief can be granted. Alternatively, defendants have moved pursuant to Rules 9(b) and 12(b)(1) to dismiss the Complaint for failure to plead fraud with particularity and for lack of subject matter jurisdiction over the common law claim. For the reasons set forth below, the motion is granted.

### The Parties and the Complaint

Metropolitan is a limited partnership organized under the laws of New York with its principal place of business in New York.

Metropolitan is in the business of trading securities. As of January 7, 1986, Metropolitan owned approximately 3% of MidCon's outstanding 10¼% Convertible Subordinated Debentures Due 2009 (the "Debentures"). Crawford represented Metropolitan in all of its relevant dealings and investment decisions regarding defendants and is the assignee of a substantial portion of Metropolitan's claim.

Occidental and OPCO are Delaware corporations, although Occidental was a California corporation at the time of the tender offer at issue. OPCO is a wholly-owned subsidiary of Occidental, formed for the purpose of acquiring MidCon. MidCon is a Delaware corporation with its principal place of business in Illinois, which was acquired by OPCO following OPCO's successful tender offer. MidCon was the issuer of the MidCon Debentures. After MidCon was merged into OPCO, OPCO changed its name to MidCon.

*The Debentures*

The Debentures were traded publicly on the Bond Floor of the New York Stock Exchange. At the time of Occidental's tender offer, $99,883,000 aggregate principal amount of debentures were outstanding, of which Metropolitan held $3,894. Each MidCon Debenture was convertible into MidCon common shares at the rate of $42 per common share or approximately 23 common shares for each $1,000 principal amount of Debenture.

The Debentures were governed by a 1984 Indenture Agreement. Section 4.10 of the Agreement provided that, in addition to a holder's right to convert to common shares, holders of the Debentures could convert at a premium if any of the following occurred:

(a) any reclassification of outstanding shares of Common Stock, ... or (b) any consolidation of the Company with one or more other corporations [,] ... or (c) the merger of the Company into another corporation, or (d) any sale or conveyance to another corporation of the property of the Company as an entirety.

*The Offer*

In early 1986, Occidental took over MidCon as a "white knight," saving MidCon's management from a hostile bid by Coach Acquisition Inc. for all of MidCon's stock and Debentures. The takeover which Occidental and MidCon agreed upon was a two-step transaction. In the first step, Occidental through OPCO offered to purchase up to 21 million shares of MidCon common stock. In the second step, MidCon would be merged into OPCO by exchanging Occidental stock for the remaining MidCon shares. The takeover was made public by a Press Release dated on or about January 1, 1986.

OPCO's offer to purchase ("the Offer") was dated January 7, 1986 and by its terms remained open until midnight, February 4, 1986. The offer was for up to 54% of all outstanding MidCon common shares at $75 per share, subject to proration. Assuming the success of the offer, the second step contemplated the merger of MidCon into OPCO. This merger was dependent upon the outcome of various events, including approval of the transaction pursuant to the Hart–Scott–Rodino Antitrust Improvements Act, the tendering by shareholders of the requisite number of shares, and approval by Occidental's shareholders.

The Offer did not provide for the purchase of MidCon's Convertible Debentures. Rather, it contained a paragraph that:

**The offer is not being made to, nor will any tenders be accepted from or on behalf of, holders of debentures.** Accordingly, holders of Debentures must convert such securities into shares in accordance with the terms and provisions of such securities, if they wish to tender shares pursuant to the Offer.

(Emphasis in original). Metropolitan in its Complaint admits that it was aware that OPCO's offer did not seek to purchase Debentures, unlike the hostile Coach offer. Compl. at ¶¶ 11 and 13.

During the first step of the takeover, Occidental did not disclose whether Section 4.10 of the Indenture Agreement would apply in the event that the merger was successful. If the provision applied to MidCon's merger into OPCO, Debenture holders would fare better by holding their De-

bentures than by converting them into common stock and tendering the shares. However, if the provision did not apply, and Debenture holders did not convert and take advantage of the tender offer, they would suffer a greater credit risk with no equity upside. In the end, the option did apply as provided in the Indenture Agreement. However, the Complaint alleges that the statement in the Offer was false and misleading because holders of Debentures did *not* have to convert securities into shares in order to receive the offering price. Compl. at ¶ 16. Further, the Complaint alleges that as a result of the omission in the Offer to inform Debenture holders about the effect of the takeover on their securities, Metropolitan converted 2,179 Debentures to common shares on January 9 and 10, 1986 and sold 1,400 Debentures on the open market on January 20, 1986. Compl. at ¶ 20.

Metropolitan also alleges that later on January 20, 1986, Crawford had a conversation with John Levitt ("Levitt"), a trader at Windsor Associates with whom Crawford often consulted, in which Levitt told Crawford that Harris Trust Company ("Harris"), the depositary for the Offer, told him on behalf of Occidental and MidCon that the Indenture option was not triggered by the Offer and was an unenforceable poison pill. Compl. at ¶ 20. Metropolitan alleges that after this conversation with Levitt, it sold the remaining 315 Debentures in the open market. According to the Complaint, all of these sales were in reliance on defendants' misstatements, omissions and misleading conduct. Further, Metropolitan alleges that on or about January 24, 1986, MidCon refused to reverse the January 9 and 10 conversions. Compl. at ¶ 22.

On or about April 1, 1986, Occidental executed the Supplemental Indenture for the Debentures; thus treating the Indenture Option as valid and binding. Debenture holders received greater consideration than they would have pursuant to the Offer.

According to Metropolitan Occidental could complete its purchase of MidCon far less expensively if the Debentures were converted to shares and tendered at the offering price in the first step of the deal than if the Debentures were held until the second step and the Indenture Option were exercised. Compl. at ¶¶ 17, 18. Further, Metropolitan alleges, MidCon owed a duty to the Debenture holders to make the best deal for them that it could and to disclose affirmatively and accurately the effect of the Offer on the Debentures and breached this duty by failure to make such disclosures, failure to correct defendant's misleading statements, and refusal to reverse the conversion. Compl. ¶ 24.

In their first claim, Metropolitan charges defendants with violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 of the Rules and Regulations of the Securities and Exchange Commission promulgated thereunder, 17 C.F.R. § 10b–5. In its second claim, Metropolitan charges defendants with intentional or negligent misstatements, fraud and deceit in violation of the common law of the State of New York. In its third and final claim, Metropolitan charges defendants with misstatements in violation of § 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(e) (the "Williams Act").

Metropolitan claims that as a result of Occidental's nondisclosure and misleading conduct, it received at least $609,166.48 less than it would have received if it had stood on its Indenture Option.

*Standard for a Motion to Dismiss*

A court should dismiss a complaint for failure to state a claim under Rule 12(b)(6) only if it appears beyond doubt that the plaintiff can prove no set of facts supporting his claim that entitles him to relief. *See Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). In considering a 12(b)(6) motion to dismiss, a court must construe the complaint's allegations in the light most favorable to the plaintiff and accept these allegations as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Law-*

**138**

yers' Assoc., 423 F.2d 188, 191 (2d Cir. 1969), cert. denied, 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1363, at 656 (1969).

*Limitations Period for Federal Securities Claims*

■ Contrary to Occidental's contentions, Metropolitan's federal securities claims are not time-barred. Metropolitan's claims accrued no later than January 30, 1986 when the market allegedly learned that the Indenture Option would be honored. The Complaint was filed on January 11, 1988.

The customary rule in the Second Circuit is that a six-year limitations period applies to claims brought under § 10(b) of the 1934 Act. *See, e.g., Armstrong v. McAlpin*, 699 F.2d 79, 86 (2d Cir.1983); *Michelson v. Merrill, Lynch, Pierce Fenner & Smith*, 669 F.Supp. 1244, 1260 (S.D.N.Y.1987). However, defendants argue that the six year period, which is borrowed from New York common law fraud, should no longer be applied. Defendants cite *Agency Holding Corp. v. Malley–Duff & Associates Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) ("*Malley–Duff*") for the proposition that federal courts must fashion a uniform limitations period for a federal claim even if the statute on which the claim is based does not provide a limitations period. *See also Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

The United States Court of Appeals for the Third Circuit, sitting *en banc*, has recently applied these recent Supreme Court decisions to federal securities litigation, and has held that all claims arising under § 10(b) and Rule 10b–5 must be subject to a uniform one year limitations period. *In Re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3rd Cir.1988). However, *Malley–Duff* does not hold that state law ceases to provide the guide for borrowing. Rather, the Supreme Court ruled that the single closest federal *or* state statute to the federal claim should provide the limi-

tations period. *Malley–Duff*, 107 S.Ct. at 2762; *DelCostello*, 462 U.S. at 161, 103 S.Ct. at 2289. Further, this Court has continued to apply the six year rule borrowed from the New York State law. *See, e.g., Zola v. Gordon*, 685 F.Supp. 354 (S.D.N.Y. 1988). In light of the customary rule of this Circuit, and in the absence of conflicting authority from this Circuit, the six-year limitation period applies to Metropolitan's federal securities claims.

*Standing under § 14(e) of the Securities and Exchange Act of 1934*

■ Defendants contend that Metropolitan lacks standing to maintain a cause of action under § 14(e) of the Williams Act, for standing under that statute is limited to the class of security holders to whom a tender offer is made, here, MidCon's common shareholders.

Section 14(e) was enacted to prevent fraud in tender offers. It provides:

[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, *in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders* in opposition to or in favor of any such offer, request, or invitation

(emphasis added). Although Metropolitan cites particular fragments of legislative history to show that Congress was interested in protecting "investors" as well as "shareholders" in the Williams Act, courts have not interpreted the Act to provide for standing by debenture holders. Rather, "the Williams Act seeks to protect only those shareholders who face the tender decision." *Plessey Co. PLC v. General Electric Co. PLC*, 628 F.Supp. 477, 488 (D.Del. 1986). *See also Piper v. Chris–Craft Industries, Inc.*, 430 U.S. 1, 36 n. 23, 97 S.Ct. 926, 946 n. 23, 51 L.Ed.2d 124 (1977) (" 'this bill is to provide the investor, *the person who is required to make a decision*, an

opportunity to examine and to assess the relevant facts....' ")

In *Piper,* the Supreme Court fashioned a standing requirement for actions brought under § 14(e) which limited standing to security holders who are in the "class for whose *especial* benefit the statute was enacted." 430 U.S. at 37, 97 S.Ct. at 947 (citation omitted). The Court held that only shareholders faced with a decision to tender were in that class. *Id.* at 35, 97 S.Ct. at 946. *See also Werfel v. Kramarsky,* 61 F.R.D. 674, 678 (S.D.N.Y.1974) (convertible warrant holders lacked standing under Section 14(e) of the Williams Act to challenge alleged deceptive statements in a proxy statement; instead, standing is limited to shareholders). Standing is accorded to both tendering and non-tendering shareholders under § 14(e). *Electronic Specialty Co. v. International Controls Corp.,* 409 F.2d 937, 946 (2d Cir.1969).

To support its claim for standing, Metropolitan cites *O'Connor & Associates v. Dean Witter Reynolds, Inc.,* 529 F.Supp. 1179 (S.D.N.Y.1981), in which plaintiff's standing to assert a claim under § 14(e) was upheld where plaintiff was an investor in stock options convertible into that for which the tender was made. However, as Metropolitan recognizes, *O'Connor* was premised on insider trading and on Rule 14(e)–3 which was promulgated by the SEC in order to prohibit insider trading in connection with tender offers.

Even if Metropolitan has standing under § 14(e) as a common shareholder, for it converted Debentures into shares after the Offer to Purchase was made public, Metropolitan lacks standing to bring its claim under 14(e) because the injuries which it alleges arise in connection with its status as a holder of the Debentures, not as a holder of common stock. *See Sargent v. Genesco, Inc.,* 352 F.Supp. 66, 80 (M.D.Fla. 1972), *aff'd in part and rev'd in part,* 492 F.2d 750 (5th Cir.1974) ("[t]he only solicitations alleged ... were made to debenture holders. Plaintiffs therefore have no standing to assert the claim alleged in Count II under Sections 14(a) or 14(e)."). Here, Metropolitan is not claiming fraud

with respect to its rights as a common shareholder. Nor does it claim that the Offer to Purchase was misleading as to its prospective rights as a shareholder. Therefore, Metropolitan has no standing to bring a claim based on a violation of the Williams Act.

*The Nature of the Offer to Purchase—The Duty to Disclose*

The Williams Act

The gravamen of plaintiff's claims is Occidental's omission from the Offer to Purchase of a statement disclosing Occidental's intentions and beliefs respecting the provision of the Debenture Indenture Agreement that would be triggered in the event of a merger. Metropolitan charges that Occidental's statement in its written offer was false and misleading in that it implies that Debenture holders must convert to receive the offering price. Compl. at ¶¶ 16–17. However, Occidental had no duty to disclose to every class of MidCon security holder the effect of the tender offer with respect to that particular class, and Occidental had no such duty to the holders of convertible debentures.

■ First, even if plaintiffs had standing to bring a claim under the Williams Act, contrary to the analysis above, the Act does not impose on Occidental a duty to disclose to Debenture holders. The Williams Act was designed to regulate purchases of large blocks of stock of a public company for cash. *Piper v. Chris–Craft Industries, Inc.,* 430 U.S. at 22, 97 S.Ct. at 939, and requires disclosure of:

> [t]he "background and identity" of the offeror, the source and amount of funds or other consideration to be used in making the purchases, the extent of the offeror's holding in the target corporation, and the offeror's plans with respect to the target corporation's business or corporate structure.

*Id.* at 22–23, 97 S.Ct. at 939–940 (citations omitted). However, there is no authority for the position that a maker of a tender offer for a specific class of securities— here, common stock—had a duty to disclose to holders of the other classes of securi-

ties—convertible debentures—how the offer may impact on them. *Cf. Plessey Co. PLC v. General Electric Co. PLC*, 628 F.Supp. 477 (D.Del.1986). *See also Radol v. Thomas*, 772 F.2d 244, 254 (6th Cir.1985), *cert. denied*, 477 U.S. 903, 106 S.Ct. 3272, 91 L.Ed.2d 562 (1986) ("a tender offer and subsequent merger are distinct acts with separate concerns toward which the securities laws and SEC rules are directed in their regulatory schemes," and it is "entirely appropriate to consider each step in such a transaction separately.").

Indeed, "over-disclosure" about the second, or merger stage in a two-step transaction may result in a violation of federal securities laws, for the second stage involves the exchange of MidCon's securities for Occidental's. Over-disclosure may thus cause the tender offer to be construed as an offer to sell securities prior to registration in violation of § 5 of the Securities Act of 1933, 15 U.S.C. § 77e. As the Sixth Circuit explained in *Radol*:

> disclosure at the tender offer stage should not go beyond that specifically required by the Williams Act and the tender offer rules, and that "statements which are not required by the Williams Act may constitute an 'offer to sell' the securities to be exchanged in the subsequent merger [in] violation of Section 5 of the 1933 Act."

772 F.2d at 254, *citing* SEC Release No. 33–5927, *reprinted in* 3 Fed.Sec.L.Rep. (CCH) ¶ 24,284H (April 24, 1978).

OPCO disclosed its objective to purchase 21 million shares of MidCon common stock then outstanding, it described itself as the purchaser, described its past contacts and negotiations with MidCon, disclosed the financing of the transaction and its hope of merging with MidCon while retaining some of MidCon's directors, and its intention to maintain the present dividend policy. OPCO also disclosed Occidental's financial interest in outstanding MidCon common stock, identified contacts between Occidental and MidCon regarding MidCon's securities, disclosed First Boston's fees, summarized Occidental's financial condition, and advised of the applicability of regulatory and antitrust law. Additional disclosure as

to the effect of the transaction upon others than the tenderers was not required. Thus, Metropolitan's claim pursuant to the Williams Act must be dismissed for failure to state a claim.

Section 10(b)

Like the Williams Act, § 10(b) of the 1934 Act and Rule 10b–5 prohibit manipulative acts which are based on nondisclosure or misrepresentation of information material to an investor's decision. *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 477–79, 97 S.Ct. 1292, 1302–04, 51 L.Ed.2d 480 (1977). To be manipulative under 10(b), conduct must be "designed to deceive or defraud investors by controlling or artificially affecting the price of securities." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976). Occidental's Offer to Purchase did not misstate or omit to state material facts in violation of 10(b).

■ As seen, OPCO fully disclosed all necessary information about the transaction including the uncertainty of the second step, the merger. Nevertheless, Metropolitan charges defendants that its failure to disclose its intentions with respect to the option provision in the Indenture Agreement caused it to convert its Debentures into MidCon common shares and tender the latter, and to sell its remaining Debentures on the open market, rather than to retain them and take advantage of the Indenture Option.

Metropolitan's charge is not actionable. The fact that there was uncertainty about OPCO's "offer does not, in and of itself, make the offer a manipulative device. Most tender offers include conditions which make acceptance of the tender uncertain." *Dan River, Inc. v. Icahn*, 701 F.2d 278, 288 (4th Cir.1983) (where tender offeror offered $18 per share if target would not resist takeover and $15 if target resisted, offer was not manipulative). *See also Radol*, 772 F.2d at 255 (two-tier, front-end loaded acquisition was not manipulative).

■ With respect to Metropolitan's charge that MidCon owed the holders of its Convertible Debentures a duty to disclose,

MidCon had no greater duty of disclosure than OPCO and Occidental had with respect to the tender offer. In any event, the Offer to Purchase did not misstate or omit to state material facts. MidCon, like the other defendants, had no duty to disclose whether OPCO or Occidental would honor the Indenture Option. Indeed, where the duties of an issuer (and a trustee) to debenture holders are circumscribed by the Indenture Agreement, no extraordinary duties will be implied under the federal securities laws. *See Meckel v. Continental Resources Co.*, 758 F.2d 811 (2d Cir. 1985). *See also Valente v. Pepsico, Inc.*, 454 F.Supp. 1228, 1242–43 (D.Del.1978) (no disclosure need be made in an offer to purchase where an issuer of debentures makes a self tender without stating that it intends to later redeem the debentures at a price higher than the tender offer).

Because defendants owed no duty to plaintiffs under the federal securities laws, the first claim in the complaint of a violation of 10(b) and the third claim of a violation of 14(e) are dismissed for failure to state a claim upon which relief can be granted.

Common Law Claims

According to Occidental, because the securities claims must be dismissed for failure to state a claim on which relief can be granted, pendent jurisdiction over Metropolitan's common law fraud claim does not exist. Further, Occidental contends that Metropolitan inadequately pleaded diversity jurisdiction because it did not plead the citizenship of Metropolitan's General Partners. Therefore, Occidental urges, the common law claim must be dismissed for lack of jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). However, Metropolitan in its reply papers states that both of Metropolitan's General Partners are New York citizens for diversity purposes. Thus, the Complaint will be treated as amended to add the allegation of the citizenship of Metropolitan's general partners and to plead diversity properly.

■ Metropolitan's common law claim is for "intentional or negligent misstatements, fraud and deceit in violation of the common law of the State of New York." However, because Occidental did not have a duty to inform Debenture holders how its offer to purchase common shares might affect them, failure to inform was not a misstatement, and therefore no cause for fraud can lie. *See Quintel Corp., N.V. v. Citibank, N.A.*, 589 F.Supp. 1235, 1244 (S.D.N.Y.1984) (Sweet, J.) (citations omitted) ("[n]on-disclosure unaccompanied by some act or conduct which deceives the plaintiff is not a misrepresentation.").

Further, to support a claim for negligent misrepresentation absent a contractual relationship between the plaintiff and the defendant, parties must be in privity. *Credit Alliance v. Arthur Anderson & Co.*, 65 N.Y.2d 536, 483 N.E.2d 110, 493 N.Y.S.2d 435 (1985). Direct oral or written communication resulting in a nexus approaching privity under the principles of *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931) can also support a claim for negligent misrepresentation. *Credit Alliance*, 493 N.Y.S.2d at 445. *See also William Iselin & Co., Inc. v. Mann Judd Landau*, 71 N.Y.2d 420, 522 N.E.2d 21, 527 N.Y.S.2d 176 (1988). The Offer to Purchase does not establish a direct communication between the plaintiff, a debenture holder, and the defendants. *See William Iselin & Co., supra.*

Only where a confidential or fiduciary relationship exists will silence work as an element to support a claim for fraud. *See Moser v. Spizzirro*, 25 N.Y.2d 941, 942, 252 N.E.2d 632, 305 N.Y.S.2d 153 (1969); *Amend v. Hoffman*, 293 N.Y. 587, 59 N.E. 2d 416 (1944). However, the Amended Complaint does not allege or even infer that Occidental or OPCO had a fiduciary relationship with Metropolitan as Debenture holders, and although some unspecified "duty" to debenture holders is alleged by Metropolitan with respect to MidCon, MidCon owed no fiduciary duty. *See Simons v. Cogan*, 549 A.2d 300 (Del.Sup.Ct. 1988) (corporation does not have a fiduciary duty to debenture holders under Delaware law); McDaniel, *Bondholders and Corporate Governance*, 41 Business Lawyer 413.

Because the claims are dismissed on grounds of 12(b)(6), there is no need to consider whether the claims should be dismissed on grounds of 9(b).

*Conclusion*

For the reasons above, Metropolitan's complaint is dismissed for failure to state a claim upon which relief can be granted.

IT IS SO ORDERED.